Filed 3/15/16  Reis v. Time Warner NY Cable CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN REIS,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>TIME WARNER NY CABLE, LLC,<br><br>　　　Defendant and Respondent. | D069064<br><br>（Super. Ct. No. CIVRS1013457)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 18, 2016, be modified as follows:

1.  On page 4, the words "removed and" are deleted from the second sentence of the first full paragraph so that the sentence now reads:

"The following day, the company replaced 45 feet of cable in Reis's yard."

2.  On page 16, the words "removal and" are deleted from the second sentence of the first full paragraph so that the sentence now reads:

"While some facts in the record might lend support for such a conclusion (the cable's location under the hedge and Reis's knowledge of the area), others (the nature of the fall and the severity of Reis's injuries, and Time Warner's replacement of 45 feet of cable in Reis's yard days after the fall) support the opposite conclusion."

**There is no change in the judgment.**

HUFFMAN, Acting P. J.

Copies to:  All parties

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHN REIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TIME WARNER NY CABLE, LLC, <br><br> Defendant and Respondent. | D069064 <br><br><br> (Super. Ct. No. CIVRS1013457) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Janet M. Frangie, Judge.  Reversed.

Law Office of Gerald Philip Peters and Gerald P. Peters, Andrew D. Stein & Associates and Rebecca A. Davis-Stein, and Casillas, Moreno & Associates and Arnoldo Casillas for Plaintiff and Appellant.

London Fischer, Richard S. Endres and Jonathan F. Sher for Defendant and Respondent.

John Reis appeals from summary judgment entered in favor of defendant Time Warner NY Cable, LLC (Time Warner).  Reis filed a lawsuit against Time Warner after

he sustained injuries tripping over a Time Warner cable that had emerged from the ground in his yard. In its motion for summary judgment, Time Warner argued it could not be held liable because it did not install the cable that Reis tripped over; it did not breach any duty to Reis with respect to the cable or, alternatively, any alleged defect was trivial; and it did not have actual or constructive notice of a dangerous condition.

On appeal, Reis asserts the trial court erred by granting the motion for summary judgment because Time Warner did not adequately establish a defense to Reis's negligence claim or show that Reis could not establish an essential element of his claim. Reis also contends triable issues of fact remain as to whether Time Warner can be held liable for Reis's accident. Reis also challenges the court's denial of his request for judicial notice. We conclude Time Warner did not meet its burden and agree with Reis that triable issues of fact remain with respect to whether Time Warner breached a duty of care owed to Reis. Accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

Reis purchased his home in Chino Hills in December 1997 from the original owner, who purchased the home new in 1976. At the time he moved into the home in January 1998 Reis had cable television service, which was provided by Aldelphia Communications Corporation (Adelphia). In 2006, Time Warner acquired the franchise for cable service in Chino Hills from Aldelphia as result of Aldelphia's bankruptcy. Time Warner has provided cable television service to Reis's home since that time. Reis does

2

not dispute that the cable at issue was installed before Time Warner acquired the Chino Hills cable franchise. The record contains no evidence establishing who initially installed the cable.

A utility easement runs alongside Reis's property. The service cable that Reis tripped over runs from a utility pedestal near the street in Reis's front yard to Reis's house. On the day of the incident, January 10, 2010, Reis was working in his front yard. As Reis was raking leaves that had fallen from a hedge he had just trimmed a few feet from the pedestal, his foot caught on a portion of cable that had come unburied. Reis fell backward, hitting his head on a concrete curb. Reis lost consciousness and was taken to the hospital by ambulance. Reis sustained a concussion and alleges debilitating long-term injuries from the fall, including persistent headaches, back pain, and cognitive and emotional disabilities, that have kept him from working since the incident.

Reis had last trimmed the hedge approximately six months before the incident, and had trimmed it approximately 25 times since he moved into the house. He raked the hedge clippings around the area the same way each time. Reis also estimated that he had mowed the lawn around the vicinity of where he fell, but not over the place where the cable emerged, over 300 times. Reis had never seen an exposed cable in his yard before the accident.

Time Warner employees were at Reis's home three times in the 90 days before Reis's fall. Technician Gabriel Gonzelez responded to service calls at Reis's home on October 13, 2009 and October 28, 2009. During the first service call, Gonzalez was at

3

Reis's property for about an hour and half and spent approximately 20 minutes working on the pedestal. During the second service call, Gonzalez was again at Reis's property for about an hour and half and spent five minutes working at the pedestal. Gonzalez stated his general practice, and Time Warner's policy, was to inspect all cable equipment within the vicinity of where he performed work. Gonzalez remembered checking around the pedestal and did not recall seeing an exposed cable. Had he seen the cable above the ground, he would have reported it to Time Warner. Time Warner Technician Dominic Gomez and a crew of other employees performed an upgrade to equipment within the pedestal on December 22, 2009. Gomez did not specifically recall working on the property, but like Gonzalez stated that it was his practice to inspect the area where he performed work and would have reported an exposed cable had he seen one.

After the accident, on January 13, 2010, Time Warner performed a site evaluation of Reis's property. The following day, the company removed and replaced 45 feet of cable in Reis's yard.

B. *Procedural History*

In June 2010, Reis filed a claim for damages with the City of Chino Hills (City), which the City rejected. In December, Reis brought the instant suit against the City and Time Warner. Reis's complaint asserted three causes of action. Two against the City for public entity liability and failure to protect against dangerous conditions and a negligence cause of action against Time Warner. Reis's negligence claim alleged Time Warner owed Reis a duty to exercise ordinary and reasonable care with respect to its use of the utility

4

easement and that Time Warner's failure to ensure the cable was buried 18 inches below ground was a breach of that duty. In January 2011, Reis amended his complaint without substantive change to his claim against Time Warner.

Thereafter the parties engaged in discovery and the City brought an unsuccessful motion for summary judgment. In denying the motion, the trial court found the City failed to carry its burden to show (1) "that the conditions of public property alleged by [Reis] do not constitute a dangerous condition of public property [pursuant to Government Code sections 830 and 835] as a matter of law;" (2) that the City did not have constructive or actual notice, pursuant to Government Code section 835.2, of the condition alleged to have caused the harm; and (3) that the City is immune from liability under Government Code sections 818.6 and 821.4. The trial court also concluded there were triable issue of fact as to (1) whether Time Warner was an independent contractor for the City (whose actions the City would be liable for under Government Code section 815.4) and (2) whether the City permitted Time Warner to install cable.

In April 2014, Reis was given leave to file an amended complaint adding Adelphia as a defendant. The second amended complaint asserted the negligence claim against Adelphia (in addition to Time Warner) and added an additional specific allegation that Time Warner and Adelphia owed a duty of care with regard to "inspecting, repairing and maintaining the cable system and equipment." Time Warner answered the second

5

amended complaint in May 2014 and brought a motion for summary judgment in September.[1] Time Warner asserted it was entitled to summary judgment because: (1) it did not install the cable and, therefore, could not have negligently created the allegedly hazardous condition; (2) it owed no duty to Reis under the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), and even if a duty existed the defect was so trivial that liability could not be imposed; and, finally, (3) even if the condition of the cable was sufficiently dangerous or defective, Reis's claim was not viable because Time Warner did not have actual or constructive notice of the condition.

In his opposition to the motion, Reis contended that Time Warner failed to establish it owed no ordinary duty to Reis under the *Rowland* factors and that it owed no statutory duty of care under certain municipal ordinances. Reis also asserted that Time Warner had constructive notice of the defective condition because, even though it did not install the cable, as the successor to Adelphia it was obligated under California Public Utility Commission (PUC) standards to conduct reasonable inspections of the cable and failed to do so. Reis also contended Time Warner did not establish, as a matter of law, that the exposed cable was a trivial defect. Reis alternatively argued that even if Time Warner had shifted the burden to him, he had raised triable issues of material fact as to whether Time Warner breached the standard of care by failing to adequately inspect its

---

[1]     Time Warner brought a motion for summary judgment in January 2014, but withdrew that initial motion in April.

6

cable in Reis's yard, and whether Time Warner breached a duty to the City to properly maintain its cable facilities and provide insurance and indemnification to the City to compensate Reis for his injuries.

On February 19, 2015, the court granted Time Warner's motion, finding undisputed facts established that Time Warner "did not install the subject cable therefore, it cannot be liable for improperly installing the cable." The court further found that Time Warner "had no notice or knowledge of any exposed cable on [Reis's] residence" and "duly inspected the area of its equipment," and, therefore, was not "liable for failing to inspect, repair, or maintain its equipment, including the subject cable." The court entered judgment in favor of Time Warner on March 2, 2015.

## DISCUSSION

## I

On appeal, Reis contends the trial court erred by granting summary judgment because Time Warner did not establish an affirmative defense to Reis's negligence claim or show that Reis could not establish an essential element of his claim. Reis also contends that triable issues of material fact remain concerning Time Warner's liability.

## A

A motion for summary judgment or adjudication shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment or adjudication has the "initial

burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant meets this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. (*Id*. at pp. 853-854.) Once a defendant has demonstrated the plaintiff's evidence is deficient, the plaintiff may successfully oppose the motion for summary judgment by showing the evidence permits conflicting inferences as to the particular element of the cause of action or by presenting additional evidence of its existence. (Code Civ. Proc., § 437c, subds. (c), (p)(1); *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.)

The summary judgment procedure is directed at revealing whether there is evidence that requires the fact-weighing procedure of a trial. " '[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131.) However, a material issue of fact may not be resolved based on inferences if contradicted by other inferences or evidence. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 856.)

"The evidence of the moving party [is] strictly construed, and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion [are to] be resolved in favor of the party opposing the motion." (*Branco v. Kearny Moto Park, Inc.*

8

(1995) 37 Cal.App.4th 184, 189.) The trial court does not weigh the evidence and inferences, but instead merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)

On appeal, we evaluate the respective evidentiary showings de novo to determine if the evidence permits conflicting inferences as to a particular element of the plaintiff's cause of action, or as to a defense to it. In performing our review, "we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) "We need not defer to the trial court and are not bound by the reasons for the summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.)

B

Reis asserts summary judgment was not proper because Time Warner did not present evidence that shifted the burden of proof to him with respect to whether Time Warner was liable for Adelphia's alleged negligent installation of the cable, or whether Time Warner itself was negligent for failing to properly maintain the cable. Time Warner responds that the evidence conclusively established that it did not install the cable and that Reis's failure to assert a claim or argue in opposition to its motion that Time

9

Warner was liable for Adelphia's installation of the cable forecloses this court from considering this theory of liability. With respect to its own conduct, Time Warner argues (1) that it cannot be held liable for a breach of duty because it did not have actual or constructive notice of the alleged defect and (2) even if it did breach its duty to Reis it cannot be held liable because the defect was trivial. Time Warner also asserts that Reis's argument concerning negligence per se is misplaced.

1. *Time Warner's Liability for Adelphia's Conduct*

We agree with Time Warner that reversal is not warranted based on Time Warner's liability for Aldelphia's conduct. This issue was not raised in the trial court. The trial court found Time Warner was not directly liable for improper installation because "the undisputed facts with supporting evidence establish that Time Warner Cable did not install the subject cable therefore, it cannot be liability for improperly installing the cable." It did not consider Time Warner's indirect liability for Adelphia's installation or maintenance of the cable.

We are cognizant of the principle Reis advances that an appellant may assert a new theory that pertains only to questions of law on undisputed facts for the first time on appeal. (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.) This rule cannot be invoked, however, " 'if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue . . . .' " (*Ibid.*) In such a case, considerations of fairness dictate that " 'the opposing party should not be required to defend against it on appeal.' " (*Ibid.*) Further, whether this court considers a

10

new theory of liability on appeal is discretionary. An appellate court is not required to consider a new theory, even if it raises a pure question of law. (*Greenwhich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)

As Time Warner points out, the second amended complaint does not assert claims against Time Warner based on its assumption of Adelphia's liabilities. Further, despite his assertion to the contrary, Reis's opposition to Time Warner's motion for summary judgment did not include argument on this theory.[2] Whether Time Warner could be held liabile for Adelphia's conduct and whether the purchase agreement conveyed such potential liability requires at minimum an examination of the agreement between the two companies. That agreement is not in the record before this court. In light of this factual consideration, we decline to make an exception in this case to the general rule that a new theory of liability cannot be raised for the first time on appeal.

2. *Time Warner's Liability for Its Own Conduct*

Time Warner's principal argument in its motion for summary judgment was that it owed no duty to Reis under the *Rowland* factors. The issue of duty is a question of law for the trial court. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674.) The trial court, however, did not base its order granting summary judgment on a lack of duty. Instead, the trial court concluded Time Warner was not liable because there was no

---

2    To support his argument that the issue was raised below Reis points solely to the fact that the trial court took judicial notice of the 2006 bankruptcy court order authorizing the sale of Adelphia's assets to Time Warner, which he submitted in support of his opposition to Time Warner's motion. The record, however, does not show that Reis made any assertion tying the document to Time Warner's liability for Adelphia's conduct.

11

dispute that Time Warner did not install the cable and liability based on Time Warner's breach of its duty of care with respect to maintaining the cable was foreclosed by a lack of actual or constructive notice of the defect.

On appeal, Reis asserts this ruling was error. In essence, he contends that Time Warner owed him a duty of care, Time Warner's evidence in support of its motion did not establish it did not breach that duty, and, even if it did, triable issues of material fact remain as to whether Time Warner had notice of the alleged defect. As evidence of Time Warner's breach of its duty of care Reis points to Time Warner's failure to comply with PUC General Order (G.O.) 128 and Chino Hills Municipal Code section 5.52 et seq. In response to Reis's arguments, Time Warner does not argue it owed no duty to Reis. Instead, Time Warner asserts (1) Reis did not meet his burden to show a factual dispute concerning notice of the alleged defect and (2) the duty it owed to Reis was not breached because it conducted reasonable inspections of the cable or, alternatively, the alleged defect was trivial.

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages. [Citations.] A plaintiff meets the causation element by showing that (1) the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm, and (2) there is no rule of law relieving the defendant of liability. [Citation.] These are factual questions for the jury to decide, except in cases in which the facts as to causation are undisputed." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)

12

In this case, whether or not Time Warner had notice of the allegedly defective condition of the cable, exposing it to liability for failing to repair, remains an open question of fact reserved for the jury. "[W]here the plaintiff relies on the failure to correct a dangerous condition to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it." (*Ortega, supra,* 26 Cal.4th at p. 1206.)[3] "The plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence." (*Ibid*.) That knowledge, in turn, "may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.' [Citation.] Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury . . . . Each accident must be viewed in light of its own unique circumstances." (*Id*. at pp. 1206-1207; see also *Beck v. Sirota* (1941) 42 Cal.App.2d 551, 557 ["Ordinary care is a relative term. . . . The amount of care must be in proportion to the danger to be avoided and the consequences reasonably to be anticipated."]; *Bridgman v. Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 448 ["The care required must, of course, be commensurate with the particular risk involved, and the risks may vary with many different factors . . . ."].)

_____

[3]    We note that *Ortega* and cases like it are not perfectly aligned to the situation presented here. *Ortega* involved store owner liability for failing to detect and correct a hazardous condition. (*Ortega, supra,* 26 Cal.4th at p. 1205.) In its briefing in the trial court, Time Warner drew an analogy to the store owner slip-and-fall liability cases and we agree this case can be analyzed under the notice framework.

As noted, Time Warner does not challenge the existence of a duty to Reis as the entity in possession and control of the cable. Instead, Time Warner argues that it established, as a matter of law, that the duty was not breached and it did not have constructive or actual notice of the alleged defect because its "technicians were at Reis's home three times within 90 days of Reis's accident" and Reis himself was in the yard frequently and never saw the cable. It further argues that "[n]o reasonable inspection would have detected the emerged cable" or "the depth of buried cable."

The declarations of Time Warner's technicians and Reis's testimony, however, do not conclusively establish (and, therefore, shift the burden of proof to Reis to refute) that the defective condition was not there long enough for Time Warner to discover it. Nor does Time Warner's evidence conclusively establish that Time Warner's conduct complied with the standard of reasonable care. The questions of when the cable became exposed, whether the cable became exposed because of improper maintenance on the part of Time Warner, and whether Time Warner's inspections were reasonable in these circumstances are issues of fact for the jury.[4]

---

[4] Although the issue is not raised by Reis, we also note the apparent inconsistency between the court's ruling denying the City's motion for summary judgment and the order under review granting Time Warner's motion. On the record before this court, it appears that the City remains subject to liability for Time Warner's conduct while Time Warner does not. The trial court's earlier order denies the City's motion "on the issue of whether City is liable for plaintiff's injuries, pursuant to [Government] Code section 815.4" and states that "[t]he City does not meet its threshold burden of showing there are no contracts between the city and [Time Warner] which would have created an independent contractor relationship." Government Code section 815.4 states that a "public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to

Time Warner also argues that even if it had constructive notice, it cannot be held liable for damages because the defective condition at issue is trivial. "The trivial defect doctrine . . . is an aspect of a landowner's duty which a plaintiff must plead and prove. [Citation.] The doctrine permits a court to determine whether a defect is trivial as a matter of law, rather than submitting the question to a jury. [Citation.] 'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.' " (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567 (*Stathoulis*).)

The triviality rule " 'provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property. . . . [¶] The legal analysis involves several steps. First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect

such liability if it were a private person. Nothing in this section subjects a public entity to liability for the act or omission of an independent contractor if the public entity would not have been liable for the injury had the act or omission been that of an employee of the public entity." Because the underlying briefing on the City's motion is not before this court and nothing in the record suggests that only the City and not Time Warner owed a duty to Reis with respect to the cable, the orders seem at odds with each other.

15

trivial as a matter of law and grant judgment for the landowner.' " (*Stathoulis, supra,* 164 Cal.App.4th at pp. 567-568.)

We do not agree with Time Warner that its evidence conclusively establishes summary judgment is appropriate on the basis of triviality. While some facts in the record might lend support for such a conclusion (the cable's location under the hedge and Reis's knowledge of the area), others (the nature of the fall and the severity of Reis's injuries, and Time Warner's removal and replacement of 45 feet of cable in Reis's yard days after the fall) support the opposite conclusion. Importantly, other relevant facts such as the size of the exposed cable and how far above the ground it protruded are not before this court. On this record we cannot say that the alleged defect was trivial as a matter of law.

3. *Negligence Per Se*

The doctrine of negligence per se creates a presumption that, where there was a violation of law, the violator was negligent. (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1526; Evid. Code, § 669, subd. (a).) To establish negligence per se a " '[p]laintiff must show that (1) defendant violated a statute, ordinance or regulation of a public entity, (2) the violation proximately caused his injury, (3) the injury resulted from an occurrence of the nature which the statute was designed to prevent; (4) he was one of the class of persons for whose protection the statute was adopted.' " (*DiRosa v. Showa Denko K.K.* (1996) 44 Cal.App.4th 799, 805.) "The last two elements are determined by the trial court as a matter of law, since they involve statutory interpretation [citation], while the first two elements are regarded as factual

16

matters to be determined by the jury." (*Cade v. Mid-City Hosp. Corp.* (1975) 45 Cal.App.3d 589, 597.)

If the presumption of negligence is created, it is rebuttable by proof that "[t]he person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ." (Evid. Code, § 669, subd. (b)(1).) There is no separate cause of action for negligence per se. (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 737-738.) Rather evidence of a defendant's violations of regulations or statutes may provide proof of negligence.

Here, the parties dispute both what the PUC regulations require, and whether Time Warner complied with the regulations.[5] In the trial court, Reis contended Time Warner's failure to comply with PUC regulations was evidence of Time Warner's breach of the duty of reasonable care it owed to Reis and that the regulations requiring maintenance of the cable provided Time Warner with constructive notice of the alleged defect. On remand, whether Time Warner violated the PUC's regulations should be addressed by the

_____

[5]     Reis relies on PUC G.O. 128, which provides rules for "underground electrical supply and communications systems" to "insure adequate service and secure safety to all persons engaged in the construction, maintenance, operation or use of underground systems and to the public in general." The general order contains specific rules to be followed by utilities, including cable providers, in ensuring safety in the installation and maintenance of their facilities. Reis also points to Chino Hills Municipal Ordinance section 5.52.400, which states cable facilities must be maintained "in accordance with applicable [PUC] pole attachment standards, electrical codes and industry standards of the cable television industry generally . . . ." As discussed in the following section the City's ordinances were not included as evidence before the trial court. The ordinance, however, relies on the PUC's regulation of cable providers.

finder of fact in the context of determining whether Time Warner's conduct fell below the standard of reasonable care.[6] (See *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 495 (dis. opn. of Kennard, J.) ["Deciding whether a person's conduct conformed to this standard of care on a particular occasion is generally a question of fact for the jury."].)

## II

Reis also contends the trial court erred by denying his request for judicial notice of Government Code section 53066 and Chino Hills Municipal Code section 5.52 et seq. Time Warner opposed the request, arguing the provisions were irrelevant to the issues before the court. Time Warner asserted that as a holder of a state franchise under Public Utilities Code section 5840, subdivision (a), the statute and ordinances were not applicable to it and, therefore, properly excluded.[7]

With respect to a California statute, Evidence Code section 451 generally requires a court to take judicial notice of the law. (See Evid. Code, § 451 ["Judicial notice shall

---

[6] Of note, even if Time Warner can show that the rules were not applicable, or that it adequately complied with them, this would not establish due care as a matter of law. Rather it would merely relieve Time Warner " ' " 'of the charge of negligence per se. It does not affect the question of negligence due to the acts or omissions of the company as related to the particular circumstances of the case.' [Citation.]" [Citation.] Safety regulations prescribe only the minimum care required, "and it is usually a matter for the jury to determine whether something more than the minimum was required under the evidence in the case." ' " (*Mata v. Pacific Gas and Electric Company* (2014) 224 Cal.App.4th 309, 313.)

[7] Reis also asks this court to take judicial notice of Government Code section 53066 and Chino Hills Municipal Code section 5.52.090. California Rules of Court, rule 8.252(a) requires a party seeking judicial notice to serve and file a separate motion and proposed order. Because Reis failed to do so we decline to consider his request.

18

be taken of the following: (a) The decisional, constitutional, and public statutory law of this state . . . ."]; *Kasem v. Dion-Kindem* (2014) 230 Cal.App.4th 1395, 1400 [court required to take judicial notice of state statutes and failure to do so is error].) With respect to a municipal ordinance, under Evidence Code sections 452 and 453 judicial notice is generally also required so long as the proponent of the request (1) provides each "adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request" and (2) furnishes "the court with sufficient information to enable it to take judicial notice of the matter." (Evid. Code, § 453.)

Judicial notice, however, " 'is always confined to those matters which are relevant to the issue at hand.' " (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.) " 'While Evidence Code, section 451, provides in mandatory terms that certain matters designated therein must be judicially noticed, the provisions contained therein are subject to the qualification that the matter to be judicially noticed must be relevant . . . .' " (*Ibid.*) A "decision of the judge not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the judge that was so persuasive that no reasonable judge would have refused to take judicial notice of the matter." (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291.)

As noted, Time Warner's opposition to Reis's request below asserted that Government Code section 53066 and the City's ordinances are not relevant to the disputed issues because at the time of Reis's accident the ordinance was inapplicable

19

under Public Utilities Code section 5840, subdivision (a). That provision states: "Neither the [PUC] nor any local franchising entity or other local entity of the state may require the holder of a state franchise to obtain a separate franchise or otherwise impose any requirement on any holder of a state franchise except as expressly provided in this division. Sections 53066, 53066.01, 53066.2, and 53066.3 of the Government Code shall not apply to holders of a state franchise." (Pub. Util. Code, § 5840, subd. (a).)

Reis concedes that Time Warner held a franchise from the State of California at the time of his accident and contends only that Public Utilities Code section 5840 did not preclude the application of the City's ordinances and Government Code section 53066 to Time Warner's operation of the Chino Hills franchise because Time Warner did not obtain the state franchise until July 16, 2009. Reis provides no basis, however, to justify application of Government Code section 53066 or the City's ordinances at the time of his fall. On this record, we cannot say that no reasonable judge would have found these provisions irrelevant and refused to take judicial notice of them.[8]

---

[8]    Further, Reis relies on these provisions primarily to support his contention that Time Warner should be held liable for Adelphia's conduct. As discussed, we decline to consider this theory of liability for the first time on appeal and the relevance of these rules is further called into question for this reason.

20

## DISPOSITION

The judgment is reversed.  Appellant is awarded costs on appeal.


                                                                O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

21