Filed 12/30/13  Mitchell v. City of Long Beach CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| NANCY MITCHELL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LONG BEACH,<br><br>    Defendant and Respondent. | B238482<br><br>(Los Angeles County<br>Super. Ct. No. NC054509) |

        APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County,  Ross M. Klein, Judge.  Affirmed.

        Nancy Mitchell, in pro. per., for Plaintiff and Appellant.

        Office of the Long Beach City Attorney, Charles Parkin, City Attorney, and Theodore B. Zinger, Deputy City Attorney, for Defendant and Respondent.

Plaintiff and appellant Nancy Mitchell (Mitchell), in propria persona appeals a judgment in favor of defendant and respondent City of Long Beach (City) following a defense verdict in a slip and fall case.

The jury returned a special verdict, finding that the sidewalk was not in a dangerous condition at the time of the incident.

Mitchell asserts numerous errors which denied her a fair trial.

We reject Mitchell's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 7, 2009, Mitchell, a 52-year old woman, tripped and fell on a public sidewalk near the address of 4701 Ocean Boulevard in Long Beach. On May 6, 2010, Mitchell sued the City, alleging she sustained personal injuries when she tripped and fell, and that her fall was caused by a dangerous condition on public property.[1]

The City denied that the sidewalk was in a dangerous condition at the time of the incident, and asserted it had no knowledge of the existence of the claimed condition. The City argued Mitchell's failure to exercise due care for her own safety caused her to

---

[1] Government Code section 830 provides in pertinent part at subdivision (a): " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Government Code section 835 states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

fall.  The City also disputed the nature and extent of Mitchell's claimed personal injuries.

Mitchell testified that on the day in question, she was out for a two-mile walk for health and fitness.  She was wearing a pair of six-year old flip-flops.  She "passed quite a few patches" on the sidewalk, which is 10 feet wide along Ocean Boulevard.  There were also loose leaves all over the sidewalk and a couple of fallen palm fronds.  There was a section in the center of the sidewalk where leaves had accumulated.  She didn't walk on the far right side because there was a palm frond that stuck out about three or four feet that was blowing in the wind.  Instead, she proceeded to walk on the left side, avoiding the pile of leaves in the center of the sidewalk.  It looked like it was fine to walk there.  "You couldn't tell there was a hole there at all.  It looked like it was flat, . . . and it looked like it was fine."  She took a step with her left foot, and it got caught on something and she was thrown forward and she fell face down.

Dr. Gardiner, a biomechanical engineer who testified for Mitchell, opined her fall was caused by her left foot getting caught in the vertical sidewalk slab separation which was present at the time of the accident.  He estimated the vertical offset was 7/8ths of an inch, and this type of elevation change is likely to interfere with the swinging leg of many people when they walk.  If the toe encounters an obstacle, it stops the leg, and with the body continuing to move forward, the body is in an unstable condition and a fall may occur.  Further, with leaves and dirt in the area, it makes it much more difficult to see and appreciate the tripping hazard.  He conceded it's more likely that someone wearing flip-flops has a greater tendency to catch her foot on a displacement as opposed to someone wearing tennis shoes.

Arthur Cox, superintendent of street maintenance for the City's public works department, testified the City relies on citizens to submit requests for sidewalk repairs.  His operation receives about 16,000 calls for service a year.  Prior to trial, he checked the City's records dating back to the year 2000.  Between 2000 and April 7, 2009, the date of the incident, there were no repairs or requests for service in the area of 4701

3

Ocean Boulevard. The area in question is residential on the north side of the street; the beach is on the south side. The sidewalk on that block is well-traveled, given its proximity to the beach.

In closing argument, defense counsel argued, inter alia, the subject sidewalk was well traveled and over the years must have been walked by tens of thousands of people, but only Mitchell had complained about an injury at the site. Defense counsel asserted "this was not a dangerous condition to someone who is paying attention."

The jury unanimously found the subject sidewalk was not in a dangerous condition at the time of the incident. Having determined the sidewalk was not in a dangerous condition, the jury did not reach the issue of whether the City had notice of the dangerous condition for a long enough time to have protected against it.

Mitchell unsuccessfully moved for a new trial and for judgment notwithstanding the verdict. In ruling on the posttrial motions, the trial court found, inter alia: "[T]here was substantial credible evidence to support the verdict. There was ample evidence of the dimensions of the claimed sidewalk defect and that the defect was covered by leaves and other environmental debris. The jury weighed this evidence and found it did not constitute a dangerous condition within the statutory meaning."

Mitchell filed a timely notice of appeal.

## CONTENTIONS

Mitchell's briefs are largely unintelligible but her chief contentions are as follows. She challenges the sufficiency of the evidence to support the defense verdict, and contends the City withheld material evidence in discovery, there was jury misconduct, the trial court committed instructional error, and she received ineffective assistance of counsel.

**DISCUSSION**

1. *Substantial evidence supports jury's determination the subject sidewalk was not in a dangerous condition at the time of the incident.*

      a. *General principles.*

The law imposes no duty on a landowner, including a public entity, to repair trivial defects, or to maintain its property in an absolutely perfect condition. (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 (*Stathoulis*).) The decision whether a crack or other defect in a walkway is dangerous does not rest entirely on the size of the depression. Although the size of a crack or pothole is a pivotal factor in the determination, a tape measure alone cannot be used to determine whether the defect was trivial. (*Id.* at pp. 566-567.)

Several decisions "have found height differentials of up to one and one-half inches trivial as a matter of law. (See, e.g., *Barrett, supra,* 41 Cal.2d at p. 74 [in the absence of aggravating conditions, differential of less than half an inch deemed trivial]; *Caloroso, supra*, 122 Cal.App.4th at p. 927 [elevation difference of under half an inch]; *Fielder, supra*, 71 Cal.App.3d at p. 724, fn. 4 [same]; *Nicholson, supra*, 5 Cal.2d at p. 367 [one and one-half inch elevation difference]; *Whiting v. City of National City* (1937) 9 Cal.2d 163, 165-166 [elevation difference of a maximum of three-fourths of an inch].) However, it is also true that as 'the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law.' (*Fielder, supra*, 71 Cal.App.3d at p. 726.) Moreover, size alone is not determinative of whether a rut presents a dangerous condition. It is just one of several factors—albeit '[t]he most important of these factors'—for determining whether a given defect may be deemed trivial as a matter of law. (See Thomas, et al., Premises Liability in California, *supra*, § 3:46 at p. 222.) We must also consider the nature and quality of the defect, the time of day and lighting conditions when the accident occurred, and whether there is evidence any one else has been injured by the same

5

defect. (*Fielder, supra*, 71 Cal.App.3d at p. 734.)" (*Stathoulis, supra*, 164 Cal.App.4th at p. 568.)

b. *Jury properly found the absence of a dangerous condition*.

Here, the trial court did not determine the instant sidewalk separation was trivial as a matter of law. Rather, the issue of the existence of a dangerous condition was submitted to the jury, which weighed the evidence and found the absence of a dangerous condition. The evidence fully supports the jury's determination.

As indicated, the evidence showed, inter alia, this sidewalk, in close proximity to the beach, had been traversed by countless pedestrians over the years, without incident. On the day of the incident, Mitchell went for a two-mile fitness walk wearing a pair of six-year old flip-flops. She observed "quite a few patches" on the sidewalk, as well as loose leaves all over the sidewalk. She tripped and fell when her left foot got caught in a slight vertical sidewalk slab separation, measuring about 7/8ths of an inch.

On this record, the jury reasonably found no dangerous condition existed. Instead, the jury was entitled to conclude Mitchell fell because she failed to exercise due care for her own safety.

2. *No merit to Mitchell's claim the City suppressed discovery*.

Mitchell contends the City suppressed essential documents, which denied her a fair trial.

In approaching this issue, we begin with the trial court's January 4, 2012 ruling on the motion for new trial: "[A]lthough the court understands plaintiff's disappointment in the verdict, it must address the ad hominem attacks leveled against defense counsel. Plaintiff makes several vitriolic accusations of fraud. The court finds no evidence of fraud by defense counsel, nor did the court observe any improper conduct by defense counsel at trial."

By way of background, during the pendency of the action, Mitchell's Request for Production – Set One, Number 21, sought: "Any and all documents, records, photos, or recordings of any type that reference any maintenance, inspection, and or repair of the

sidewalk area at or near the intersection of Ocean Blvd. and Roycroft Ave., *near 4711 Ocean Blvd., in the City of Long Beach*, where plaintiff, Nancy Mitchell, alleges she tripped and fell, for the period of five years prior to April 7, 2009 to present." (Italics added.)

The City responded thereto as follows: "After diligent search and inquiry no such documents were located."

On January 12, 2012, following denial of the motion for new trial, Mitchell filed notice of appeal.

Five months later, *during the pendency of this appeal*, Mitchell filed a Public Records Request Form with the City, requesting "all records pertaining to complaints of sidewalk defects, inspections requested and inspections made, inspection schedules, all repairs made and maintenance of the public sidewalk located *at 4701 to 4713 Ocean Blvd (on the residential side of the parkway)* from 1990 to the end of 2010." (Italics added.)

This records request, which was somewhat different from the earlier Request for Production of Documents, generated three pages: complaints by one Lloyd Crawford in 2007 of sidewalk tree root damage on the 4700 block of Ocean; a 2008 request for service, pertaining to broken sidewalks and potholes on Ocean between St. Joseph and Roycroft, and indicating a constituent had fallen in the area; and a 2008 inspection request, referencing a broken sidewalk on Ocean between St. Joseph and Roycroft.

Unfortunately for Mitchell, her belated discovery of these documents is unavailing. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and

serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 [see rule 8.252] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] Absent exceptional circumstances, no such findings should be made. [Citation.]' [Citations.]" (*In re Zeth S*. (2003) 31 Cal.4th 396, 405, italics omitted.)

The circumstances of this case afford no basis for this court to deviate from the settled rules on appeal. If a civil judgment could be set aside whenever new facts are developed, no litigation would ever be final. The documents attached to Mitchell's opening brief were not presented to the jury or to the trial court on the motion for new trial, and cannot be considered by this court as a basis for disturbing the judgment.

3. *No merit to claim of instructional error*.

Mitchell appears to argue the trial court erred in giving three instructions. Those instructions are CACI No. 206 (evidence admitted for limited purpose), CACI No. 1102 (definition of dangerous condition) and CACI No. 1104 (reasonableness of defendant's inspection system).

However, Mitchell has not shown the CACI instructions incorrectly state the law.

Moreover, as the trial court noted in denying the motion for new trial, "Plaintiff's attorney did not object to the instructions, and that is binding on plaintiff."

For these reasons, Mitchell's claim of prejudicial instructional error is meritless.

4. *Trial court acted within its discretion in denying motion for new trial on ground of juror misconduct*.

a. *Trial court's ruling.*

In denying the motion for trial, the trial court ruled in pertinent part: "Plaintiff raises a number of grounds for her motion for a new trial. The most serious is her contention of juror misconduct. Plaintiff and her former counsel both submit declarations stating that they heard a juror remark that he had tried unsuccessfully to trip himself over what the juror believed to be a similar defect, and shared this experience

8

with other jurors.  First, the declarations are hearsay.  More importantly, the court is left to surmise when this 'experiment' and discussion took place.  Although troubling, it is insufficient to meet the burden for a new trial.  Despite plaintiff's polemics, it is the court's impression that this event, even if it took place was not a deciding factor in the verdict.  Her present vitriolic averments notwithstanding, it was the totality of the facts along with the plaintiff's demeanor at trial, which swayed the jury in favor of the defense."

   b. *General principles regarding inquiry into juror misconduct; jury experiments.*

 "In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry.  [Citation.]  First, it must determine whether the affidavits supporting the motion are admissible.  (Evid. Code, § 1150.)  If the evidence is admissible, the trial court must determine whether the facts establish misconduct.  [Citation.]  Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.  [Citations.]  A trial court has broad discretion in ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion.  [Citations.]"  (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704.)

   c. *Juror experiments*.

 Not "every jury experiment constitutes misconduct.  Improper experiments are those that allow the jury to discover *new* evidence by delving into areas not examined during trial.  The distinction between proper and improper jury conduct turns on this difference.  The jury may weigh and evaluate the evidence it has received.  It is entitled to scrutinize that evidence, subjecting it to careful consideration by testing all reasonable inferences.  It may reexamine the evidence in a slightly different context as long as that evaluation is within the ' "scope and purview of the evidence." '  [Citation.]  What the jury cannot do is conduct a new investigation going beyond the evidence admitted."  (*People v. Collins* (2010) 49 Cal.4th 175, 249.)

9

For example, in *Collins*, the jury "did not go beyond the record in its attempt to evaluate the trial evidence." (*People v. Collins, supra*, 49 Cal.4th at p. 251.) Jurors' demonstration in the deliberation room following discussion about whether the victim was shot while standing or kneeling did not result in the acquisition of new evidence, and thus was not juror misconduct, where two jurors took the positions of the defendant and victim, and jurors used a protractor and string to demonstrate the bullet trajectory based on expert testimony at trial. "None of the variables relied upon by the jury were outside the scope of the evidence." (*Ibid*.)

   d. *Trial court acted within its discretion in denying new trial motion*.

Preliminarily, as the trial court found, the declarations by Mitchell and her trial counsel as to what they overheard amounted to hearsay.

Further, even assuming one of the jurors attempted to trip himself on a similar defect, that would not necessarily constitute misconduct. As indicated, improper experiments are those that allow the jury to discover new evidence by delving into areas not examined during trial. (*People v. Collins, supra*, 49 Cal.4th at p. 249.) Provided the variables relied upon by the jury were within the scope of the evidence, no misconduct occurred. (*Id*. at p. 251.)

Finally, even assuming juror misconduct did occur, on this record the trial court acted within its discretion in finding it was nonprejudicial. As indicated, the trial court concluded the verdict was based on "the totality of the facts along with the plaintiff's demeanor at trial, which swayed the jury in favor of the defense."

For all these reasons, Mitchell's juror misconduct arguments are unavailing.

5. *No merit to claim of ineffective assistance of counsel*.

The constitutional right to effective assistance of counsel applies to a criminal defendant (*In re Hill* (2011) 198 Cal.App.4th 1008, 1015-1016), not to a plaintiff in a tort case. Mitchell's contention she is entitled to a new trial based on ineffective assistance of counsel is meritless.

10

6. *Remaining arguments not reached*.

Mitchell's remaining arguments require no discussion. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Mitchell's status as a party appearing in propria persona does not provide a basis for preferential consideration. "A party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.] Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

## DISPOSITION

The judgment and postjudgment order are affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.



ALDRICH, J.


11