Filed 10/29/20  Dufaut v. Rancho Coastal Humane Society CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAROSE DUFAUT, | D075443 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00008709-CU-PO-NC) |
| RANCHO COASTAL HUMANE SOCIETY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Reversed.

Law Office of Jessica C. Ayala and Jessica C. Ayala for Plaintiff and Appellant.

Myers Fozi & Dwork, Golnar J. Fozi and Tom A. Wiseman for Defendant and Respondent.

# I

## INTRODUCTION

Jarose Dufaut appeals a judgment entered after the trial court granted summary judgment in favor of Rancho Coastal Humane Society (the Society) on Dufaut's sole cause of action for premises liability.  Dufault sued the Society after sustaining injuries when she tripped and fell on a throw rug in a thrift shop owned and operated by the Society.  Dufaut contends the trial court erred in applying the trivial defect doctrine and concluding her evidence was insufficient to establish more than a trivial defect in the rug.  She also contends the court erred in finding there was no evidence to show the Society had actual or constructive notice of a dangerous condition prior to the fall.

We agree triable issues of fact exist as to each issue and, therefore, reverse the judgment.

# II

## BACKGROUND

### A

Dufaut sued the Society for premises liability alleging she was injured "when she tripped and fell on an unsecured, tattered throw rug that was laying on the concrete floor surface located in the aisle-way between [two] clothing racks" in the Society's thrift store in April 2012.

### B

The Society moved for summary judgment contending Dufaut could not meet her burden of proving the existence of a dangerous condition of the property because she did not know what caused her fall and could not identify "anything defective or inherently dangerous" about the rug she believed she fell over.  Alternatively, the Society asserted it could not be

2

liable for premises liability as a matter of law because any defect in the rug was, at most, trivial.

In support of its motion for summary judgment, the Society presented a declaration from a manager of the Society's thrift shop, which sells used and donated items. According to the declaration and photographs presented by the manager, the Society displayed area rugs for sale on the floor throughout the store, including under and between clothing racks.

The flooring of the thrift store consisted of sealed concrete with a rough, non-slip surface. Store personnel cleaned the floors, walkways, and bathrooms before opening the store and staff "inspected the floor and walkways removing any debris or dangerous conditions" before opening and throughout the day.

The Society also presented excerpts of Dufaut's deposition testimony. According to the deposition testimony, Dufaut shopped at the store on the afternoon of April 4, 2012, selected some items for purchase, and headed to the cashier holding one or two items in her hands. Because another patron was standing in the most direct aisle to the cash register, Dufaut made a detour around some clothing racks. As she turned to walk between two clothing racks, she felt her foot get "caught" on something. She tripped and fell. As she fell, she tried to grab a clothing rack to break her fall, but her body twisted around so she landed on her back and hit her head on the concrete floor.

When she opened her eyes, she saw she had fallen over a faded brown or earth tone rectangular throw rug that was "a bit crumpled up, a bit gathered … on itself." Dufaut thought it gathered because her foot caught in the rug. The rug was not flat, it was "loose and bunched."

Dufaut testified the rug appeared thin and had fringes or loose edges. The rug had no backing and its texture appeared rough and dry, like burlap, with "things that are unwoven on it." She saw "unwoven parts" on the rug, but she could not tell if those unwoven areas were on the edges of the rug or somewhere else within the rug because of how it was gathered.

The Society also provided Dufaut's special interrogatory responses in which she stated she tripped on an "unsecured, old, torn, and possibly frayed, runner-type of rug in a walkway adjacent to, and between, clothing racks where customers would walk while browsing and shopping for items offered for sale." She sustained a closed head injury with minor traumatic brain injury resulting in, among other things, memory issues.

According to the manager's declaration, he was working at the cashier's desk when he heard someone fall. He found Dufaut laying on her back between two clothing racks. The manager said he "looked at the area of [Dufaut's] fall" and "did not see any area rugs, racks or shelves out of place." He also said he saw "no debris or obstruction." He declared the rugs near where Dufaut fell "were flat against the floor," none "were torn or defective," and the "thickest rugs were no more than 3/4 of an inch thick, and were flush and flat against the floor." The manager stated there was no history of falls over area rugs in the store since 2009.

The manager stated the rugs remained in the same location until they were photographed by an investigator in May 2012. Dufaut did not recognize any of the area rugs in the photos shown at her deposition as being the one over which she tripped. However, she marked a rug in a photograph that she thought had similar characteristics.[1]

_____

[1] Dufaut has no pictures of the rug. Dufaut went back to the store a week after the incident to take pictures of the area where she fell, but she

C

Dufaut opposed the motion for summary judgment contending the Society did not meet its burden for summary judgment because it did not negate Dufaut's testimony that a rug caused her fall and triable issues of fact remained regarding whether the condition of the rug and its unsecured placement on the floor presented a dangerous condition. Defaut also contended the Society could not establish lack of notice because the manager's declaration admitted the Society placed the rug in the store for display and her fall was a consequence of the combination of the narrow width of the walking areas between the racks, distractions along the path, and the placement of the rugs along the floor, all of which posed a hazard. She also contended issues of fact existed regarding whether any defect in the rug or its placement within the store was trivial.

In support of her opposition, Dufaut presented her own testimony that she knew she fell on a throw rug. She testified the rug got "a bit crumpled up, a bit gathered" because she "got caught in it." She did not notice the floor while she shopped because she was looking for an item. She testified the walking areas between the clothing racks would not allow two people to pass in an aisle. She also contended the Society had notice of the dangerous condition of the property based on the negligence of the Society or its employees in operating the property. Dufaut pointed to the manager's declaration about the placement of the area rugs for display and her testimony about the narrow walkways through the store.

---

could not recognize any of the rugs as being the one upon which she tripped. She said the store was "major cleaned up compared to when I was there," but she took pictures that she gave to an attorney. The former attorney did not return them to her or give them to her subsequent attorney.

5

D

The trial court considered the evidence and determined there were factual disputes about whether the rug was worn, tattered, old or crumpled, as Dufaut testified, or whether the rug was not torn, defective, or otherwise created a dangerous condition, as the manager attested. The court, nevertheless, applied the trivial defect doctrine and ruled Dufaut's testimony about seeing "unwoven parts" was too scant to show a genuine factual dispute that the rug presented a nontrivial dangerous condition. Additionally, the court concluded there was no evidence the Society had knowledge of the existence of a dangerous condition. The court granted the Society's motion for summary judgment and entered judgment in favor of the Society.

III

DISCUSSION

A

*Standard of Review*

" 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of

6

action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## B

### *Triable Issues Regarding Trivial Defect*

The trivial defect doctrine "permits a court to determine whether a defect is trivial as a matter of law, rather than submitting the question to a jury." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567 (*Stathoulis*).) Courts have applied the trivial defect doctrine to cases involving both public and private persons who maintain walkways "because it is impossible to maintain 'heavily travelled surfaces in a perfect condition and … minor defects such as differences in elevation are bound to occur in spite of the exercise of reasonable care by the party having the duty of maintaining the area involved.'" (*Ursino v. Big Boy Rests.* (1987) 192 Cal.App.3d 394, 397 (*Ursino*).)

"A court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*).) If the type and size of a defect appears trivial, the court should consider additional factors such as "lighting and visibility conditions at the time of the accident, the existence of … obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner." (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568.) Conversely, "[i]f the 'court determines … sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous, the court may not rule … the defect is not

7

dangerous as a matter of law.' " (*Kasparian v. AvalanBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 28 (*Kasparian*).)

The trial court determined the Society met its initial burden of establishing no dangerous condition existed by presenting evidence that the rugs where Dufaut fell were not torn or defective, were no more than three-quarters of an inch thick, and were flush with the floor. Looking at Dufaut's evidence, the court determined there was no evidence the rug was "torn, tattered, unsecured, and possibly frayed" as Dufaut alleged. The court concluded Dufaut's deposition testimony that the rug was "crumpled up" and "gathered" was because she "got caught in it," not that it was in this condition before the fall. The court recognized Dufaut testified she saw "unwoven parts" of the rug. However, the court determined this testimony alone was too scant to show a triable issue of fact that the condition of the rug was more than a trivial defect.

We disagree with the court's conclusion that no reasonable inferences can be drawn in Dufaut's favor from the evidence presented to show the condition of the rug presented more than a trivial defect. This is unlike cases where a small crack or slight height differential between concrete slabs on a sidewalk may be trivial in broad daylight without obstructions. (See *Barrett v. Claremont* (1953) 41 Cal.2d 70, 74 [one-half-inch gradual rise of asphalt above the surface of a broad sidewalk on a busy well-traveled street considered a minor defect]; *Ursino, supra,* 192 Cal.App.3d at pp. 395–397 [three-quarter inch height differential between two sidewalk sections outside a restaurant during daylight was a trivial defect]; *Caloroso, supra,* 122

8

Cal.App.4th at p. 929 [crack less than one-half inch in walkway was trivial].)[2]

Here, the Society placed throw rugs between and under clothing racks in its thrift store where people are expected to look at items on the racks and may carry items that could obstruct their view. Dufaut felt her foot get "caught" as she turned between two clothing racks. After the fall, she saw the rug was gathered. Even if the rug was not gathered before the fall, as the court inferred, it begs the question of *why* the rug gathered. Did the rug gather because her foot caught on the "unwoven" portion of the rug, because it was not secured to the floor, or some combination of those conditions?

Dufaut's testimony that a portion of the rug was unwoven also raises factual questions about whether the rug was, in fact, "tattered," "old," or "torn" or if the rug's natural state presented a dangerous condition for patrons under the circumstances. In her deposition, Dufaut identified a rug in two photographs that she believed had characteristics consistent with the rug over which she fell. The rug she identified had fringes, did not have a backing, appeared dry, and had "things that are unwoven on it." The photographs provided in the record are poor, but appear to show a rough and uneven rug with tassels or fringes on the end in an aisle. The rug also does not appear to lie as flat to the floor as do other nearby rugs. Summary

---

[2]    The Society cites an unpublished federal district court decision in support of its position that summary judgment based on trivial defect is appropriate. Although we may consider unpublished federal district court decisions as persuasive authority on federal matters, we find no such persuasive value in this case. In that case, the plaintiff tripped and fell over a rubber transition strip at the store entrance separating a thicker carpet from a thinner carpet. The area was well-lit, the area was unobstructed, and the strip rose gradually to less than half an inch above the carpet. (*Mosley v. Target Corp.* (E.D.Cal. 2012, No. 2:11-CV-00440-GEB) 2012 WL 5543685, at p. *4.)

9

judgment is not appropriate "if competing and conflicting evidence of the size, nature and quality of the defect, or the circumstances surrounding the plaintiff's injury, raise triable factual questions as to whether the defect or conditions of the surface presented a danger to [individuals] exercising ordinary care." (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 569–570; see also *Kasparian, supra,* 156 Cal.App.4th at pp. 28–29 [summary judgment was not proper where material factual issues existed regarding whether the recessed nature of a drain gave rise to a hazardous condition considering surrounding circumstances]; *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 271 [summary judgment inappropriate where reasonable minds may differ about whether a one-half inch protrusion of metal rebar above a tire stop is a dangerous condition considering all surrounding circumstances].)

Under the circumstances presented in this case, we cannot say, as a matter of law, an unwoven and unsecured throw rug placed in a thrift store between clothing racks where customers walk while shopping constitutes only a trivial defect.

C

*Triable Issues Regarding Notice of Dangerous Condition*

The trial court alternatively concluded Dufaut presented no evidence to show the Society had notice of the existence of a dangerous condition. We disagree.

"Commercial property owners are not insurers of the safety of their patrons, although they owe the patrons duties 'to exercise reasonable care in keeping the premises reasonably safe. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*); *Moore v. Wal-Mart Stores, Inc.* (2003) 111 Cal.App.4th 472, 477 (*Moore*).) To exercise a degree of care that is commensurate with the risks involved, the owner must make reasonable

10

inspections of the portions of the premises open to customers. (*Ortega*, *supra*, at p. 1205; *Moore*, *supra*, at p. 476.) An owner is liable for harm caused by a dangerous condition, of which the owner had actual or constructive knowledge. (*Ortega*, *supra*, at p. 1206.) An injured plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it, but failed to take reasonable steps to do so. (*Moore*, *supra*, at p. 476.) One way to carry that burden is to raise an inference that the hazardous condition existed long enough for the owner to have discovered it, if an owner exercising reasonable care would have learned of it. (*Ortega*, *supra*, at pp. 1210–1213; *Moore*, *supra*, at p. 477.)" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 431.)

However, this is not a situation where a slippery substance or item of food caused a shopper to slip and fall and where inspections may have revealed a new condition. (See *Ortega*, *supra*, 26 Cal.4th at p. 1204 [slip in puddle of milk]; *Moore*, *supra*, 111 Cal.App.4th at p. 475 [slip on a french fry].) The facts presented here are more like *Sharpless v. Pantages* (1918) 178 Cal. 122, where a theater patron tripped and fell on a strip of loose carpet while walking down some stairs. The *Sharpless* court upheld a decision to deny the theater owner's motion for nonsuit stating, "It being the duty of the defendant to use ordinary care to maintain the carpet upon the steps in such condition that it would be safe for persons to pass thereon in an ordinary manner, the fact that the plaintiff's foot slipped as she stepped upon the carpet is some evidence tending to show that defendant had failed to do so." (*Id.* at p. 124.)

"Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the

11

owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition.  Under such circumstances knowledge thereof is imputed to him.  [Citation.]  Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises." (*Hatfield v. Levy Bros.* (1941) 18 Cal.2d 798, 806 (*Hatfield*).)

In *Hatfield*, there was evidence from which a jury could infer an employee was negligent in applying wax to a floor before a patron slipped and fell.  Therefore, there was sufficient evidence for a jury to find the condition existed long enough for the store owner to have discovered the condition in a reasonable time.  (*Hatfield*, *supra*, 18 Cal.2d at pp. 803–805, 807.)  Likewise, in *Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 386, evidence an employee spilled a cleaning fluid that caused a fall was sufficient to impute knowledge to the employer and prevented summary judgment.

Here, the Society placed the area rugs throughout the thrift shop for display.  Dufaut felt her foot get "caught" on something and, after the fall, she observed a gathered rug with unwoven parts.  She inferred the rug gathered because it caught on her foot.  From this evidence, a reasonable inference may be drawn that the Society or its employees placed the rug on the floor of the shop without securing it.  The photographs submitted by the Society show

12

rugs of different styles and heights placed in walkways and under clothing racks where patrons are expected to look at items.

As discussed, *infra*, issues of fact exist regarding whether the condition of the rug itself and/or its unsecured placement under or near a clothing rack presented a dangerous condition in the context of a thrift shop. If, as Dufaut testified, there was an unwoven area on the rug, a reasonable person could infer the employees were negligent in their daily inspections because they failed to observe and remedy a dangerous condition.

The trial court also considered the import of evidence that Dufaut was unable to recognize the rug over which she tripped one week after the fall. The court acknowledged Dufaut's memory of the event may not be clear, which was a credibility issue that the court could not consider on summary judgment. Alternatively, the court suggested this evidence "could indicate that the rug on which [Dufaut] tripped was, indeed, so frayed and 'unwoven' that [the Society] chose to dispose of it after the accident." The court concluded such an interpretation of the circumstantial evidence "only shows that [the Society] took measures to remedy the dangerous condition once it became known that it was dangerous—not that [the Society] had knowledge of the 'unwoven rug creating a dangerous condition *prior* to [Dufaut's] fall." We do not agree this is the only interpretation. Evidence the Society removed a defective rug could be used to impeach the manager's testimony about the inspections or could show control of the premises and raise a question of whether the company exercised ordinary care in placing a rug in the store in the first place.

Whether Dufaut can prove her premises liability claim at trial is an open issue. But, on the record before us, we conclude there are triable issues

13

of fact regarding the Society's negligence in the placement or inspection of the rug to impute knowledge to the Society and prevent summary judgment.

IV

DISPOSITION

The judgment is reversed.  Appellant shall recover her costs on appeal.


McCONNELL, P. J.

WE CONCUR:



O'ROURKE, J.



GUERRERO, J.

14