[No. B199196. Second Dist., Div. Eight. June 30, 2008.]

JOANNE STATHOULIS et al., Plaintiffs and Appellants, v.
CITY OF MONTEBELLO, Defendant and Respondent.

**COUNSEL**

Gelfand and Gelfand, Raymond J. Feinberg and Gary B. Gelfand for Plaintiffs and Appellants.

McCune & Harber and Kenton E. Moore for Defendant and Respondent.

**OPINION**

**RUBIN, J.—**

## SUMMARY

This is an appeal from the judgment entered after the trial court granted summary judgment in favor of the City of Montebello in this action for damages arising out of a dangerous condition of public property. We conclude the trial court erred in finding that potholes in a street over which an appellant tripped and fell constituted a trivial defect, as a matter of law. In light of circumstances surrounding the accident, the question of whether the holes constitute a dangerous condition presents a triable factual issue. Accordingly, we reverse.

## PROCEDURAL BACKGROUND

In March 2005, appellant Joanne Stathoulis tripped and fell in shallow holes in a residential street in the City of Montebello. She filed this action against respondent City of Montebello (City) alleging negligence for the dangerous condition of its street. Her husband sued for loss of consortium.[1]

The City answered and, in due course, moved for summary judgment on the ground it was immune from liability, because the defect over which Stathoulis tripped was trivial as a matter of law. (Gov. Code, § 830.2.) (Further unspecified statutory references are to the Government Code.) Judgment was entered in favor of the City, and Stathoulis filed a timely notice of appeal.

## FACTUAL BACKGROUND

About 8:45 p.m. on March 22, 2005, Stathoulis attended a funeral service for a family friend. Following the service, she was invited to attend a reception at the home of the decedent's family, located in a duplex in Montebello. Stathoulis had never visited this location before.

Stathoulis parked across the street from the reception. She could not recall whether, as she crossed the street, she looked at the roadway surface. There was no debris, and no cars, trash bins or anything else obscured Stathoulis's view. The weather was dry and the evening was clear. The heel of one of Stathoulis's shoes caught and became embedded in a depression in the street pavement. She thrust her other foot onto the street in an attempt to regain her

---

[1] Mr. Stathoulis, who has no factual role in this appeal, will not be referenced again.

balance, but that foot became embedded in one of two adjacent holes. Stathoulis was immobilized and unable to regain her balance. The momentum pitched her forward. She struck the pavement, fracturing teeth and causing lacerations to her face. She did not see the gouges in the street before she fell.

The City moved for summary judgment, contending it was immune from liability because the gouge marks in the street were, as a matter of law, no more than trivial defects. In support of its motion, the City submitted a declaration by its Department of Public Works manager, Michelle Haro. In October 2006, Haro took measurements and photographs of the gouge marks at the location where Stathoulis fell. She found three holes in the street, about nine feet from the curb. The southernmost gouge was 20 inches long, with a maximum width of six and one-half inches and a maximum depth of one inch. The middle gouge was 19 inches long, had a maximum width of four and one-half inches, and was half an inch deep. The northernmost hole was 24 inches long, a maximum of five inches wide, and had a maximum depth of one inch. The holes were one to four inches apart.

Haro also declared it was the City's practice to prepare work orders anytime a complaint or concern was lodged about an area for which her department was responsible, including potholes. Those work orders are filed by address, and kept four years. Haro reviewed the City's files for the addresses of the two duplexes located nearest the potholes, and found no work order for either location. According to Haro, that meant the City had "no record of any complaints of injuries concerning the gouge marks in the street prior to the accident in this case . . . ." Haro also stated that, since 2003, the City had no record of receipt of any request to repair or complaint of inoperability for the overhead streetlight located 44 feet south of the gouge marks on the same side of the street.

Stathoulis opposed the motion. Her opposition was supported by her own declaration, a declaration from Brad Avrit, a civil engineer, who inspected, measured and photographed the gouge marks in December 2006, and a declaration by Steve Mazmanyan, a resident of the neighborhood in which the accident occurred. Stathoulis asserted material factual issues remained in dispute regarding the depth and nature of the holes and whether the gouge marks, by virtue of their color and texture and the low level of ambient lighting in the vicinity, were obscured from view, as well as whether the City knew of the existence of the dangerous holes. Stathoulis argued these factual disputes refuted the City's contention that the gouge marks were, as a matter of law, no more than trivial defects. The City lodged objections to portions of each declaration. The motion was argued, the City's evidentiary objections were sustained and judgment was granted. Stathoulis appeals.

# DISCUSSION

The City contends it cannot be liable because, as a matter of law, there was no condition creating a substantial risk of injury. It contends the gouge marks were a "trivial defect." We find this contention unpersuasive.

## 1. *The standard of review.*

We review a trial court's grant of summary judgment de novo. We independently consider the evidence offered by both sides in connection with the motion, except that to which objections were properly sustained, and uncontradicted inferences reasonably supported by that evidence, to determine whether facts not subject to triable dispute warrant judgment for the movant as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment on a claim on which the plaintiff bears the burden of proof may present evidence conclusively negating the plaintiff's claim. Or, the defendant may present evidence to show the plaintiff cannot establish at least one element of the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 853.) Once the moving defendant satisfies its initial burden, the plaintiff must show—by reference to specific facts—the existence of a triable issue as to that affirmative defense or cause of action. (*Aguilar, supra*, 25 Cal.4th at p. 849; Code Civ. Proc., § 437c, subd. (p)(2).)

On review from the judgment, we view the evidence most favorably to the party opposing the motion, liberally construe its evidence, and strictly construe the movant's. (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284 [30 Cal.Rptr.3d 507, 114 P.3d 753].)

## 2. *The trial court erred in granting summary judgment in favor of the City.*

### a. *The governing statutes.*

Liability may attach to a governmental entity if there is a dangerous condition on governmental property. (§§ 830, 835.) A condition is "dangerous" if it creates a "substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Conversely, a condition is "not dangerous," if "the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances

that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care . . ." in a reasonably foreseeable manner. (§ 830.2.)

According to section 835, "[e]xcept as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity . . . created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

### b. *The trivial defect doctrine.*

An initial and essential element of recovery for premises liability under the governing statutes is proof a dangerous condition existed. (*Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 72–73 [256 P.2d 977] (*Barrett*), citing *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 363 [54 P.2d 725] (*Nicholson*).) The law imposes no duty on a landowner—including a public entity—to repair trivial defects, or "to maintain [its property] in an absolutely perfect condition." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398–399 [237 Cal.Rptr. 413] (*Ursino*).) "[A] property owner is not liable for damages caused by a minor, trivial or insignificant defect in property." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 [19 Cal.Rptr.3d 254] (*Caloroso*).) Some defects are bound to exist even in the exercise of reasonable care in the maintenance of property and cannot reasonably be expected to cause accidents. (*Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 151 [18 Cal.Rptr. 484] (*Johnson*), superseded on other grounds by statute as stated in *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 831 [15 Cal.Rptr.2d 679, 843 P.2d 624].)

■ The decision whether a crack or other defect in a walkway is dangerous does not rest entirely on the size of the depression.[2] Although the

---

[2] Most cases address defects in sidewalks. In its motion, the City argued the standard for what constitutes a dangerous condition is more stringent for a pothole than for a crack or other defect in a sidewalk. We agree with the trial court that, under the circumstances of this case, this is a distinction without a difference. The question is not the location of the defect, per se, but whether it may reasonably be anticipated pedestrians will use the surface as a public walkway. (See *Owen v. City of Los Angeles* (1947) 82 Cal.App.2d 933, 938 [187 P.2d 860].) Stathoulis fell in a residential neighborhood in which there was an expectation cars would park

size of a crack or pothole is a pivotal factor in the determination, "a tape measure alone cannot be used to determine whether the defect was trivial." (*Caloroso, supra*, 122 Cal.App.4th at p. 927.) "Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734 [139 Cal.Rptr. 876] (*Fielder*); see also *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 268 [241 Cal.Rptr. 706] (*Dolquist*) [same].) "Aside from the size of the defect, the court should consider whether the walkway had any broken pieces or jagged edges and other conditions of the walkway surrounding the defect, such as whether there was debris, grease or water concealing the defect, as well as whether the accident occurred at night in an unlighted area or some other condition obstructed a pedestrian's view of the defect." (*Caloroso, supra*, 122 Cal.App.4th at p. 927.) The court should also consider the weather at the time of the accident, a plaintiff's knowledge of the conditions in the area, whether the defect has caused other accidents, and whether circumstances might either have aggravated or mitigated the risk of injury. (*Ursino, supra*, 192 Cal.App.3d at p. 397; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 290–291 [144 Cal.Rptr. 836]; *Fielder, supra*, 71 Cal.App.3d at p. 734; *Johnson, supra*, 199 Cal.App.2d at p. 152.)

■ The trivial defect doctrine is not an affirmative defense. It is an aspect of a landowner's duty which a plaintiff must plead and prove. (*Caloroso, supra*, 122 Cal.App.4th at p. 927.) The doctrine permits a court to determine whether a defect is trivial as a matter of law, rather than submitting the question to a jury. (*Ursino, supra*, 192 Cal.App.3d at p. 399.) "Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment." (*Caloroso, supra*, 122 Cal.App.4th at p. 929; see *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704 [50 Cal.Rptr.2d 8].) "The rule which permits a court to determine 'triviality' as a matter of law rather than always submitting the issue to a jury provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property. . . . [A] landowner is not an insurer of the safety of its users." (*Ursino, supra*, 192 Cal.App.3d at p. 399.)

■ The legal analysis involves several steps. First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of

on both sides of the street, and a concomitant reasonable expectation pedestrians would regularly traverse the street to reach cars or homes.

the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner. (*Fielder, supra,* 71 Cal.App.3d at p. 729.)

If, as here, the landowner is a public entity, the court must also determine whether the defect was conspicuous enough to place the entity on notice. (§ 835.) To that end, it must consider the seriousness of the defect, its visibility to pedestrians, the frequency with which the area is travelled and the likelihood a reasonable inspection would have revealed the defect in time to make necessary repairs. (*Dolquist, supra,* 196 Cal.App.3d at p. 268; Thomas et al., Premises Liability in California (2005) § 3:47, p. 223.)

c. *The defect in this case.*

In this case, there is no real dispute any gouge mark was "about one inch deep."[3] Several decisions have found height differentials of up to one and one-half inches trivial as a matter of law. (See, e.g., *Barrett, supra,* 41 Cal.2d at p. 74 [in the absence of aggravating conditions, differential of less than half an inch deemed trivial]; *Caloroso, supra,* 122 Cal.App.4th at p. 927 [elevation difference of under half an inch]; *Fielder, supra,* 71 Cal.App.3d at p. 724, fn. 4 [same]; *Nicholson, supra,* 5 Cal.2d at p. 367 [one and one-half inch elevation difference]; *Whiting v. City of National City* (1937) 9 Cal.2d 163, 165–166 [69 P.2d 990] [elevation difference of a maximum of three-fourths of an inch].) However, it is also true that as "the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law." (*Fielder, supra,* 71 Cal.App.3d at p. 726.) Moreover, size alone is not determinative of whether a rut presents a dangerous condition. It is just one of several factors—albeit "[t]he most important of these factors"—for determining whether a given defect may be deemed trivial as a matter of law. (See Thomas et al., Premises Liability in California, *supra,* § 3:46, p. 222.) We must also consider the nature and quality of the defect, the time of day and lighting conditions when the accident occurred, and whether there is evidence anyone else has been injured by the same defect. (*Fielder, supra,* 71 Cal.App.3d at p. 734.)

■ Here, it is clear there was no debris, and no cars or other obstructions to impede Stathoulis's ability to see gouge marks in a street she had never before visited, on this dry, clear evening in an area lit by streetlamps.[4] The

---

[3] Avrit declared the gouge marks "were measured to be greater than 1 inch in numerous places," but failed to specify an exact measurement. It is not possible to ascertain his measurements from the record.

[4] In opposition to the motion, Avrit declared the illumination level in the area of between 0.10 and 0.12 "footcandles" was approximately one-fifth the minimal lighting level required

City asserts that, when examined by Haro in late October 2006, 18 months after the accident, the gouge marks contained no broken pieces of asphalt, sloped gently end to end, and were not jagged. Stathoulis insists the three holes were irregularly shaped, with jagged, abrupt vertical edges and contained loose material inside when Avrit examined them two months later. Photographs depicting the holes submitted by each side appear to support Stathoulis's position in this respect. The City claims to have no record of any complaint regarding the presence of, or potential danger presented by, the holes. Although there is no indication anyone but Stathoulis was ever injured in or by the potholes, Stathoulis did present evidence the defects had existed for at least three years, notwithstanding several nonspecific and unanswered complaints witness Mazmanyan claims to have lodged with the City, "regarding the deterioration and disrepair of the sidewalk and roadway" in his neighborhood. Finally, the presence of not one, but three, irregularly shaped and sizeable holes of about an inch deep flanking one another in the street may have both increased the risk of injury to a reasonably careful pedestrian, and decreased the possibility of his or her recovery (where, as here, one attempting to regain one's balance after tripping in one hole is caught). (See Thomas et al., Premises Liability in California, *supra*, § 3:46, p. 223, and cases cited thereat [one of three most important analytical factors is the nature of the defect and a condition is less likely to be deemed trivial as a matter of law if "comprised of large sections of broken concrete . . . ."].) Admittedly, the question here is close. Nevertheless, taken together and given the standard on summary judgment, these conditions show a triable issue exists regarding the degree of dangerousness of the gouge marks and whether they presented a substantial risk of injury and, if so, whether the City had notice of the dangerous defect.

 Under appropriate circumstances a court may determine, as a matter of law, that a given walkway defect is trivial. (§ 830.2.) However, it cannot make that determination if competing and conflicting evidence of the size, nature and quality of the defect, or the circumstances surrounding the plaintiff's injury, raise triable factual questions as to whether the defect or conditions of the surface presented a danger to pedestrians exercising ordinary care. (See *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 29–30 [66 Cal.Rptr.3d 885].) On this sparse record, we

"to identify hazards" according to an "IES Lighting Handbook." However, that evidence was properly excluded due to Stathoulis's failure to establish a foundation that the Illuminating Engineering Society of North America standard is one with which the City must comply. Moreover, although it certainly has the power to do so, in the absence of a statutory or charter provision—neither of which Stathoulis identified—a municipality has no duty to provide or maintain streetlights, so its failure to do so—or to provide a particular level of light—cannot constitute a dangerous condition. (See *Plattner v. City of Riverside* (1999) 69 Cal.App.4th 1441, 1445 [82 Cal.Rptr.2d 211] ["darkness is a naturally occurring condition that the city is under no duty to eliminate"].)

conclude reasonable minds could differ as to whether the nature and quality of the defect at issue presented a substantial risk of injury. Because reasonable minds can differ on the issue, the trial court erred in finding the defect to be trivial as a matter of law. (See Thomas et al., Premises Liability in California, *supra*, § 3:51, p. 225 ["[t]he standard for the court to use in making the preliminary determination of triviality is fairly stringent"].) Summary judgment was not appropriate.

## DISPOSITION

The judgment is reversed. Stathoulis is entitled to costs on appeal.

Cooper, P. J., and Flier, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 10, 2008, S165608.