Filed 5/3/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARK STACK,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CITY OF LEMOORE,<br><br>     Defendant and Appellant. | F082994<br><br>(Super. Ct. No. 19C-0404)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Kathy Ciuffini, Judge.

Suzanne M. Nicholson; Law Offices of Gregory L. Myers and Gregory L. Myers for Defendant and Appellant.

Freedman Law and Jesse R. Fretwell for Plaintiff and Respondent.

-ooOoo-

The City of Lemoore (City) appeals following a jury verdict in favor of plaintiff Mark Stack, who was injured when he tripped over an uneven portion of a City sidewalk. The City asks us to declare the offending portion of sidewalk not a "dangerous condition" under the Government Claims Act as a matter of law.  We decline to do so and therefore affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

On March 11, 2019, while jogging his usual route around his neighborhood, plaintiff tripped over a raised slab of public sidewalk on the west side of Fox Street in the City. The photographs of the sidewalk admitted at trial show a panel of concrete sidewalk, the edge of which is elevated about one and three-quarter inches above its neighboring panel (hereafter, the first defect).[1] As shown in the photographs and described by plaintiff and his expert witness, the lifted panel slopes slightly downward away from the first defect, as viewed from plaintiff's perspective as he jogged south; and it runs into the next sidewalk panel, which in turn slopes upward and creates a second elevated ridge where it meets with the following downward-sloping, raised panel (hereafter, the second defect). Each defect aligns with a trunk of one of the bordering trees, whose roots have grown beneath the sidewalk, pushing it up in places. A layer of pine needles appears all along the base of the first defect, except at its outermost edges. The sidewalk photographs admitted at trial were taken by plaintiff the day after his fall, and he testified they were good depictions of the conditions in the area both the previous day and over the prior two years—including the amount of pine needles.

Plaintiff was familiar with both defects from having jogged over this stretch of sidewalk some 300 times in the previous two years.[2] During this particular jog, he saw the first defect as he approached; but as he was striding over it, he was focused up ahead on the second defect, and he caught his toe on the lip of the first defect and stumbled. Unable to catch himself, plaintiff fell and broke his left wrist. He went to the emergency room and later had two surgeries to repair the wrist. Plaintiff had never tripped or fallen in that area before, and he testified that there was nothing different about the way he was jogging that day.

---

[1] We attach certain of these photographs to this opinion. (See appendix, *post*, pp. 24–26.)

[2] This estimate was based on plaintiff's testimony that he jogged five to seven times a week (extrapolated to 52 weeks per year over two years), and half the time he jogged south on the west side of Fox Street.

Plaintiff's human factors expert, Dr. Bong Walsh, later inspected the area of the fall with plaintiff and reviewed plaintiff's photos and description of the incident. According to Dr. Walsh, the second defect lay approximately 20 feet beyond the first defect, in the direction plaintiff was jogging, with a "weird sort of downslope and upslope" between the two. Dr. Walsh explained that the human brain starts planning the body's motor movements to navigate an upcoming obstacle a couple of seconds before encountering it; and that based on plaintiff's average rate of jogging, plaintiff would have been just two seconds away from the second defect while he was crossing the first. Therefore, Dr. Walsh opined that the existence of the second defect this distance from the first defect "enhance[d] the fall risk" for joggers, whose brains would be focused on the second defect while they were clearing the first.[3] Dr. Walsh acknowledged that the first defect was "clearly visible" from 25 feet away, and that plaintiff presumably would have been focused on it from about that distance while he was two to two and a half seconds away.

Dr. Walsh opined that another factor increasing the risk of a fall was the layer of pine needles at the base of the first defect. According to Dr. Walsh, the pine needles made it difficult to tell just how high the first defect was, both because they obscured portions of the face of the elevation and because they "create[d] a color issue," making it more difficult to judge "the contrast of where the defect starts and ends." Although the proximity of the two defects was, in his opinion, the larger issue, the pine needles were still a contributing factor as well.

Plaintiff sued the City for general negligence and for maintaining a dangerous condition on public property in violation of Government Code section 835.[4] The case

---

[3] Dr. Walsh clarified that the second defect would not have created additional risk for those walking, as opposed to jogging or running, because a walker would have closer to five seconds in between the defects.

[4] All further statutory references are to the Government Code unless otherwise stated.

went straight to jury trial. The trial court ultimately granted the City a judgment of nonsuit (Code Civ. Proc., § 581c) on the negligence cause of action, recognizing the rule that "[l]iability of public entities is set by statute, not common law." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 156 (*Bonanno*).) The trial court denied the City's motions for nonsuit and for a directed verdict on the section 835 cause of action, rejecting the City's arguments grounded in lack of notice and certain immunities not at issue in this appeal.

On March 22, 2021, the jury returned a special verdict in plaintiff's favor, expressly finding that the sidewalk was in a dangerous condition at the time of the incident. The jury awarded plaintiff nearly $90,000 in damages, attributing no comparative fault to him. The court entered judgment for plaintiff and against the City, from which the City now appeals.

## DISCUSSION

### I.      Governing Law

Section 835, part of the Government Claims Act (§ 810 et seq.), "sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) To recover under section 835, a plaintiff must prove that a "dangerous condition proximately caused his or her injury; that the condition created a reasonably foreseeable risk of the type of injury that was actually incurred; and that the public entity either created the dangerous condition through a negligent or wrongful act or omission of its employee, or had actual or constructive notice of the dangerous condition sufficiently in advance of the accident as to have had time to remedy it." (*Bonanno*, *supra*, 30 Cal.4th at p. 155; see § 835.) "An initial and essential element … is proof a dangerous condition existed." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 (*Stathoulis*).) That is the only element at issue in this appeal.

4.

As used in the Government Claims Act, " '[d]angerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).) The Government Claims Act also states, conversely, that "a condition is not a dangerous condition … if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."[5]  (§ 830.2.)

These statutory parameters are meant to " 'guarantee that cities do not become insurers against the injuries arising from trivial defects.' "  (*Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 755.)  Together with the surrounding case law, they form what is known as the "trivial defect doctrine," shielding public entities from liability for defects that a court deems trivial as a matter of law.  (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104 (*Huckey*).)  This doctrine reflects an acknowledgement that "it is impossible to maintain a sidewalk in a perfect condition.  Minor defects are bound to exist.  A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel."[6]  (*Whiting v. National City* (1937) 9 Cal.2d 163, 165 (*Whiting*).)

---

[5]     The Law Revision Commission described section 830.2 as "[t]echnically … unnecessary, for it merely declares the rule that would be applied in any event when a court rules upon the sufficiency of the evidence."  (Cal. Law Revision Com. com., 32 pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 830.2, p. 28.)  However, its purpose is "to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous."  (*Ibid.*)

[6]     " 'The rule which permits a court to determine "triviality" as a matter of law rather than always submitting the issue to a jury provides a check valve for the elimination from the court

5.

"The existence of a dangerous condition is ordinarily a question of fact—resolved here by the jury's express finding that the [sidewalk] was a dangerous condition of [public] property—but it can be decided as a matter of law if reasonable minds can come to only one conclusion." (*Bonanno*, *supra*, 30 Cal.4th at p. 148.) If the "court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous, the court may not rule that the defect is not dangerous as a matter of law." (*Fielder*, *supra*, 71 Cal.App.3d at p. 734.)

## II.     Analysis

The City's sole argument in this appeal is that the sidewalk condition where plaintiff tripped was too trivial, as a matter of law, to constitute a dangerous condition under section 835. We disagree and hold the question was properly left to the jury for a factual determination of the condition's dangerousness.

There is "no hard-and-fast rule" for what constitutes a dangerous condition, as this must be decided on the unique facts of each case. (*Fackrell v. San Diego* (1945)

system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property.' " (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105, fn. 3.) It gives us some pause that in the trial court, the City never attempted to use the trivial defect doctrine for this "check valve" purpose, instead waiting until this appeal to contest the sidewalk's dangerousness as a matter of law—after the issue had already gone to the jury for a factual determination. As a best practice, defendants who believe a given defect is not a dangerous condition should raise that legal challenge in a motion for summary judgment in the trial court. Allowing municipalities to wait until after a jury has found against them on the facts to raise their arguments on the law for the first time on appeal runs contrary to the policy of eliminating from the court system unwarranted litigation. However, section 830.2 expressly permits either "the trial or appellate court" to determine the triviality of the risk involved, and a handful of cases have reversed posttrial plaintiffs' judgments based on triviality as a matter of law without discussing whether the defendant raised the issue below. (See, e.g., *Whiting*, *supra*, 9 Cal.2d 163 [reversing the plaintiff's judgment after bench trial]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719 (*Fielder*) [reversing the plaintiff's judgment after jury trial].) Plaintiff also does not make any argument based on the City's omission. Accordingly, we do not decide this case based on the City's failure to raise in the trial court the trivial defect doctrine—which we note describes part of plaintiff's prima facie burden, rather than an affirmative defense. (See *Huckey*, at p. 1104 [explaining that the doctrine is not an affirmative defense but "an aspect of duty that a plaintiff must plead and prove"].)

26 Cal.2d 196, 206.) California Courts of Appeal typically follow a two-step analysis for determining whether a sidewalk defect is trivial, i.e., not dangerous, as a matter of law. "First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors such as the weather, lighting and visibility conditions at the time of the accident, the existence of debris or obstructions, and plaintiff's knowledge of the area. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law .…" (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568; see *Nunez v. City of Redondo Beach* (2022) 81 Cal.App.5th 749, 758 (*Nunez*) [adopting two-step framework]; *Huckey*, *supra*, 37 Cal.App.5th at p. 1105 [same].)

Although we agree with the premise that the size of the defect is the primary determinant of triviality, as discussed below, we modify the prevailing two-step framework into a holistic, multi-factor analysis.

## A. Size of the Defect

We begin with the " 'most important' " factor: the defect's size. (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568.) There was no testimony or stipulation here as to the height of the first defect—the raised sidewalk slab that tripped plaintiff as he jogged. However, one of the photos of the first defect, exhibit 4, shows a tape measure set vertically against the raised slab where it meets the lower neighboring slab. The photo is taken from a higher angle that makes it difficult to judge the exact elevation measurement, but it appears to show, at minimum, a height differential of one and three-quarter inches at slightly left of center of the ridge. As noted by the trial court in denying the City's motion for nonsuit, the photographs in exhibits 1 and 1A support an inference that the raised sidewalk slab of the first defect angles slightly upward (facing south, looking from left to right), meaning a fact finder could reasonably conclude that the

7.

height differential was even greater at the right end of the first defect.[7]  Viewing the photographic evidence most favorably to plaintiff, as section 830.2 requires, we treat the first defect as measuring one and three-quarter inches at its lowest point for purposes of this appeal.  (See *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 15, 24 [the reviewing court must examine the photographs in evidence for itself and make its own determinations]; *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 705 [noting § 830.2's requirement that the reviewing court independently evaluate the circumstances].)

This size defect hovers at the very upper limit of sidewalk height differentials any court has deemed trivial as a matter of law.  None of the cases cited in the briefs involved a differential of one and three-quarter inches or greater, and our independent search reveals just one case in which an equal or greater sidewalk height differential was deemed trivial.  (See *Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39, 43–44 (*Beck*) [holding sidewalk height differential of one and seven-eighths inches at its maximum was trivial as a matter of law, and reversing bench trial judgment for plaintiff where no other aggravating circumstances were present].)  In attempting to downplay the size of the first defect, the City quotes one court's generalization that "[s]idewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law."  (*Huckey*, *supra*, 37 Cal.App.5th at p. 1107; see *Stathoulis*, *supra*, 164 Cal.App.4th at p. 568 ["Several decisions have found height differentials of up to one and one-half inches trivial as a matter of law."])  This dictum in *Huckey* and *Stathoulis* exaggerates the generally accepted size range of defects deemed trivial.  The more

---

**7**     Although the City primarily argued lack of notice as the basis of its oral motion for nonsuit, the City also briefly argued at the outset that, as a factual matter, the sidewalk was not a dangerous condition for purposes of sections 830 and 830.2 because plaintiff had successfully navigated it many times in the past.  In denying the motion as to the section 835 claim, the trial court found the condition was dangerous and not trivial based on the "combination of the lip [of the first defect], the angle, the pine needles, and the angle downward … as you're moving, traveling [south] and then you have the next patch of concrete [in the second defect]."

accurate encapsulation is that "when the size of the depression begins to stretch *beyond one inch* the courts have been reluctant to find that the defect is not dangerous as a matter of law," i.e., that it is minor or trivial.[8] (*Fielder*, *supra*, 71 Cal.App.3d at p. 726, italics added.)

---

[8] We are aware of only one case to squarely hold a sidewalk defect of one and one-half inches or greater not to be a dangerous condition as a matter of law. (See *Beck*, *supra*, 150 Cal.App.2d at pp. 43–44 [maximum one- and seven-eighths-inch-deep sidewalk defect].) *Nicholson v. Los Angeles* (1936) 5 Cal.2d 361 is the case most commonly cited in support of the purported one- and one-half-inch threshold; but while that case indeed featured a maximum one- and one-half-inch-deep sidewalk defect, the Supreme Court did not decide whether or not the defect was dangerous as a matter of law. Rather, the court assumed it *was* dangerous but held there was insufficient evidence that the condition had achieved the degree of "conspicuousness or notoriety" needed to impute constructive notice to the city. (*Id.* at pp. 364–365, 368; see *Ness v. City of San Diego* (1956) 144 Cal.App.2d 668, 671 [observing that in *Nicholson* "a dangerous condition … was assumed for the purpose of deciding that there was no notice"].)

One Court of Appeal case on which *Huckey* and *Stathoulis* indirectly rely also involved a defect approaching the one- and one-half-inch mark; but it merely held that under *Nicholson*, the evidence did not show the city had notice—without deciding whether the maximum one- and three-eighths-inch defect was trivial as a matter of law. (See *Meyer v. City of San Rafael* (1937) 22 Cal.App.2d 46, 47, 50.) None of the other cases relied upon for the one- and one-half-inch threshold suggested in *Huckey* and *Stathoulis* involve height differentials of more than one inch. (See *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74 [holding a maximum one-half-inch ridge of asphalt constituted a minor defect]; *Whiting*, *supra*, 9 Cal.2d at pp. 165–166 [identifying a maximum three-quarter-inch sidewalk elevation as a minor defect]; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 929 (*Caloroso*) [holding trivial a sidewalk elevation of less than one-half inch]; *Fielder*, *supra*, 71 Cal.App.3d at pp. 721, 732 [holding trivial a maximum three-quarter-inch sidewalk elevation]; *Sischo v. City of Los Banos* (1940) 37 Cal.App.2d 717, 718 [identifying a "practically imperceptible" sidewalk slope of 58 one-hundredths of an inch per foot as a minor defect]; *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, 531–532 [holding a maximum one-inch sidewalk elevation a minor defect under *Whiting*]; *Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 53–54 [holding trivial a one-inch sidewalk elevation].)

In fact, the cases that have addressed whether defects around one and one-half inches high are dangerous conditions have *declined* to hold such defects trivial as a matter of law, though not based on height alone. (See *Johnson v. City of San Leandro* (1960) 179 Cal.App.2d 794, 800 [height differential of one and three-quarter inches located in a crosswalk]; *Sheldon v. City of Los Angeles* (1942) 55 Cal.App.2d 690, 692–693 [maximum one- and one-half-inch sidewalk elevation].

*Huckey* itself held a sidewalk defect reaching one and seven thirty-seconds inches (almost one and one-quarter inches) trivial as a matter of law (*Huckey*, *supra*, 37 Cal.App.5th at pp. 1095–1096, 1102–1103), but all of the other published opinions since the cases *Huckey* cites

9.

That said, there is no firmly fixed "arbitrary measurement in inches below which a defect is trivial as a matter of law and above which it becomes a question of fact whether or not the defect is dangerous." (*Beck*, *supra*, 150 Cal.App.2d at p. 43.)  This is because a "court should *not* rely solely upon the size of the defect … although the defect's size 'may be one of the most relevant factors' to the court's decision." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105, quoting *Fielder*, *supra*, 71 Cal.App.3d at p. 734.)  "Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate." (*Fielder*, at p. 734.)

In *Fielder*, as in most cases discouraging judging a defect purely by tape measure, the court was dealing with a defect under one inch high; and the rule as stated suggests a one-directional operation whereby an assertion of triviality as a matter of law cannot be *accepted* based on height alone but *can* be *rejected* based on height alone if (and only if) the height is great enough.  (*Fielder*, *supra*, 71 Cal.App.3d at pp. 722, 724, 732 [holding trivial a three-quarter-inch sidewalk nonalignment]; see *id.* at p. 734 ["While size may be one of the most relevant factors to the decision, it is not *always* the sole criteria." (italics added)]; see, e.g., *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 566–568 [in holding trivial a set of one-inch-deep gouge marks, stating a court should consider " 'any circumstances surrounding the accident which might have rendered the defect *more dangerous* than its mere abstract depth would indicate' " (italics added)]; *Caloroso*, *supra*, 122 Cal.App.4th at pp. 927, 929 [in holding trivial a sidewalk crack less than one-half of an inch deep, stating a court should consider "all of the circumstances surrounding the accident that

have only held trivial defects of less than one inch.  (See *Nunez*, *supra*, 81 Cal.App.5th at pp. 759–760 [holding trivial a maximum three-quarter-inch sidewalk height differential]; *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 385–386 [holding trivial a maximum seven-eighths-inch walkway height differential]; *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 396–398 [holding trivial a maximum three-quarter-inch walkway height differential]; *Ness v. City of San Diego*, *supra*, 144 Cal.App.2d at p. 673 [holding trivial a seven-eighths-inch sidewalk elevation].)

10.

might make the defect *more dangerous* than its size alone would suggest" (italics added)]; see also *Nunez*, *supra*, 81 Cal.App.5th at p. 757 [quoting *Caloroso*'s rule in holding trivial a sidewalk offset of less than three-quarters of an inch].)

The commonly recited two-step framework set forth above also suggests that defect size alone can preclude a legal conclusion of triviality when the size is great enough. (See *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568 ["First, the court reviews evidence regarding type and size of the defect. *If that preliminary analysis reveals a trivial defect*, the court considers evidence of any additional factors .…" (italics added)].) However, these formulations do not comport with section 830.2's express requirement to assess the triviality of "the risk created by the condition … *in view of the surrounding circumstances*," regardless of size. (§ 830.2, italics added.)

In light of section 830.2's mandate to consider "the surrounding circumstances" in every case, we think it better to adopt a holistic multi-factor framework for assessing triviality—rather than the "two-step" framework espoused by other Courts of Appeal. In our holistic multi-factor framework, the size of the defect is but one of the many circumstances to be considered; however, size remains the " 'most important' " of the dangerous condition factors. (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568, quoting Thomas, et al., Premises Liability in California (2005) § 3:46, p. 222; see *Fielder*, *supra*, 71 Cal.App.3d at p. 734 [a defect's size "may be one of the most relevant factors" to the court's decision].)

In this case, the minimum one- and three-quarter-inch height differential of the first defect weighs heavily against finding the sidewalk condition trivial as a matter of law. The height is nearly double the one-inch threshold where courts grow reluctant to take the issue from the jury. (See *Fielder*, *supra*, 71 Cal.App.3d at p. 726.) Thus, although we proceed to consider additional factors regarding the condition, the height of

11.

this defect will require a strong showing of other circumstances that made it *not* dangerous despite its height.[9]

## B. Additional Factors

Beyond size, additional factors courts typically consider in assessing a sidewalk condition's triviality as a matter of law are:  the nature and quality of the defect (including whether it has jagged breaks or cracks); whether anything was obstructing or concealing the defect (for instance, an object, debris, or other substance); the lighting and weather conditions at the time of the incident; whether the defect has caused other accidents; and plaintiff's familiarity with the area.[10]  (See *Nunez*, *supra*, 81 Cal.App.5th at pp. 757–758; *Huckey*, *supra*, 37 Cal.App.5th at p. 1105; *Caloroso*, *supra*, 122 Cal.App.4th at p. 927; *Fielder*, *supra*, 71 Cal.App.3d at p. 734.)  The City argues the present sidewalk condition must be deemed trivial as a matter of law because of its open and obvious nature, plaintiff's admitted familiarity with the condition, and the absence of prior accidents there.

### 1.  The Nature and Quality of the Condition

At the outset, we note the sidewalk condition at issue can fairly be viewed as consisting of more than one defect.  Although only the first defect physically tripped plaintiff, the evidence presented at trial supports a broader view of the sidewalk condition that plaintiff encountered.  As described above, two sets of abutting sidewalk panels formed two elevated ridges (the first defect & the second defect) separated by about

---

[9]     We are essentially employing the inverse of *Fielder*'s rule that "when two slabs of a sidewalk are nonaligned horizontally, by a *slight* depression, such a defect *may* be found to be trivial as a matter of law provided that there are no aggravating circumstances attending the defect." (*Fielder*, *supra*, 71 Cal.App.3d at p. 729, italics added.)  Flipped to fit our scenario, that rule becomes as follows:  When two slabs of a sidewalk are nonaligned horizontally, by a *significant* depression, such a defect may *not* be found to be trivial as a matter of law *unless* there are no aggravating circumstances attending the defect.

[10]     As explained below, we do not view a plaintiff's prior familiarity with the area as a proper factor in the triviality determination.

20 feet, with a slight valley formed by the downward- and upward-sloping panels in between. As viewed in exhibit 6—a photograph taken from a relatively low angle approaching the condition—the condition vaguely resembles a section of rollercoaster, albeit a gentle one. This is not the sort of condition that can only be viewed as a "mere nonalignment of two horizontal slabs," even though a nonalignment is physically what caused plaintiff's fall. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 27; see *Fielder*, *supra*, 71 Cal.App.3d at p. 734; cf. *Whiting*, *supra*, 9 Cal.2d at pp. 164–166 [identifying a gradual rise in a sidewalk slab from nothing to three-quarters of an inch above the adjoining slab as a minor defect].) Reasonable minds could differ as to the scope of the condition—and therefore its nature—based on the photographs admitted and the testimony of plaintiff and his expert that plaintiff was, in effect, encountering both defects at once. While plaintiff's feet were crossing the first defect, his brain was focused on how to navigate the second defect. The evidence supports a view that the dangerous condition comprised the first defect, the second defect 20 feet beyond it, and the "weird sort of downslope and upslope" in between the two.

In *Fielder*, the only aggravating factor the plaintiff could summon to show the three-quarter-inch sidewalk misalignment where she tripped was not trivial was evidence that another similar defect existed 125 feet away. (*Fielder*, *supra*, 71 Cal.App.3d at p. 726.) The court rejected this as an aggravating factor because "a second defect that remote in distance could not reasonably be argued to have increased the danger of the primary defect." (*Ibid.*) Here, however, a fact finder could reasonably conclude, either on their own or by crediting the expert testimony, that the second defect some 20 feet away increased the danger of the first defect for joggers, who are foreseeable users of sidewalks. (See § 830, subd. (a) [dangerous condition is one that creates a substantial risk of injury when the property "is used with due care in a manner in which it is reasonably foreseeable that it will be used"].)

13.

We agree with the City that Dr. Walsh's expert opinion that the second defect increased the danger of the first defect is not "determinative"; but we cannot agree that his opinion testimony is "irrelevant." True, " 'expert opinions on *whether a given condition constitutes a dangerous condition of public property* are not determinative.' " (*Thimon v. City of Newark*, *supra*, 44 Cal.App.5th at p. 755, italics added.) "[T]he fact that a witness can be found to opine *that [a given] condition constitutes a significant risk and a dangerous condition* does not eliminate this court's statutory task, pursuant to section 830.2, of independently evaluating the circumstances." (*Davis v. City of Pasadena*, *supra*, 42 Cal.App.4th at p. 705, italics added.) However, Dr. Walsh did not opine that the stretch of sidewalk at issue *was a dangerous condition of public property*, which we would indeed discard as an opinion offering an ultimate legal conclusion under the cases just cited.[11] Rather, Dr. Walsh explained the science behind how and why the existence of another defect 20 feet away could alter the risk of the first defect for joggers—something a lay person might not readily grasp—potentially broadening a fact finder's view of what area constituted the condition. The City cites *Fielder*'s statement that "in this area there is no need for expert opinion" because "[i]t is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous." (*Fielder*, *supra*, 71 Cal.App.3d at p. 732.) But *Fielder* was rejecting expert testimony "that the defect was dangerous, due to its depth." (*Ibid.*) This sort of intrinsic danger would indeed be readily assessable by lay persons on their own; whereas, the impact of a condition further down the road might require expert explanation. And again, Dr. Walsh was not giving a mere legal conclusion that the condition was dangerous. Expert opinions can assist courts in determining whether "sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous." (*Id.* at p. 734.) That assistance simply cannot come in the form of a pure legal

---

[11]     Dr. Walsh attempted to give such an opinion, but the trial court struck that portion of his testimony at the City's request.

conclusion; nor can the court rest on the expert's opinion alone, without independently evaluating the circumstances. Here, Dr. Walsh's explanation of the second defect's impact on a person jogging over the first defect provides a basis for reasonable minds to differ as to the scope of the area that constituted the dangerous condition at issue, and therefore its nature and associated risk.

Reasonable minds could also differ as to the quality of the first defect—the one that physically tripped plaintiff—alone. The trial court itself, in denying the City's motion for nonsuit, observed that the lip of the first defect started out as a straight edge on the left-hand side but then grew "jagged" across the rest of the lip, as though there had been some past attempt at grinding it down. In our own estimation, exhibits 1 through 4 indeed depict a rough and ragged top edge of the raised lip across most of the first defect. A fact finder could reasonably view the roughness of the lip as increasing the risk of catching a pedestrian's toe as they cross. (See *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291 (*Barone*) [reversing grant of summary judgment for the city in part because photos of the one-inch sidewalk elevation depicted an "irregular and jagged break," presenting questions of fact for the jury].)

Accordingly, "reasonable minds could differ as to whether the nature and quality of the [condition] at issue presented a substantial risk of injury," whether viewed as a whole or as just the first defect. (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 570.) This weighs against deeming the condition trivial as a matter of law.

2. Obstructions

Turning to the next factor, the City argues that the sidewalk condition must be held trivial as a matter of law because it was "open and obvious." Plaintiff admitted at trial, and does not now dispute, that he was "familiar with" the existence of both the first and second defects, from having jogged frequently in that area for some two years before the incident; and that he in fact saw the first defect that day before it tripped him. It is also undisputed that the first defect was "clearly visible" from 25 feet away. At the same

15.

time, according to Dr. Walsh, the previously mentioned layer of pine needles obstructed the base of the first defect, making it difficult to judge the full height of the rise between the slabs of sidewalk. Our review of exhibits 1 through 4 confirms that a significant accumulation of dirt and pine needles appears all along the base of the first defect, except at its outermost edges. Even with the benefit of focused inspection, we cannot see past the debris to determine where the two slabs of sidewalk meet. Thus, although the overall condition was clearly visible, reasonable minds could differ as to whether the full depth of the first defect and its attendant danger would have been apparent to an approaching jogger. (Cf. *Gilbert v. City of Los Angeles* (1967) 249 Cal.App.2d 1006, 1010 [noting in the assumption of risk context that viewing an object is not the same as knowing the magnitude of its risk].) That the same level of pine needles skirted the base of the first defect on every other occasion that plaintiff safely traversed this stretch of sidewalk does not change the fact of their continual obstruction.

The City contends this case is "virtually indistinguishable" from *Huckey*, where the Fourth District Court of Appeal affirmed a grant of summary judgment for the city defendant, in part because the sidewalk height differential was in "plain sight and, therefore, would have been avoidable to a pedestrian walking on the sidewalk and approaching the height differential 'with due care.' " (*Huckey*, *supra*, 37 Cal.App.5th at p. 1109.) *Huckey* dealt with a slightly lower sidewalk elevation ranging from nine-sixteenths of an inch on one end and up to one and seven thirty-seconds inches at the other end (with no broken or jagged edges), with "*some* dirt and leaves in and near the height differential." (*Id.* at pp. 1095–1096, 1108–1109.) After reviewing the photographs, the court concluded that none of the debris "substantially obscured the height differential from a pedestrian's view." (*Id.* at 1109.) Leaving aside the greater depth and roughness of the instant elevation, we are unable to say the same after reviewing the present photographs. A reasonable fact finder could well view the layer of

dirt and pine needles against the base of the first defect as substantially obscuring its height differential.

Accordingly, although all would (and the parties here do) agree that the sidewalk was visibly uneven, the layer of debris lodged against the base of the first defect can reasonably be viewed as an obstruction sufficient to prevent a careful pedestrian from knowing the extent of its danger. This partial obstruction serves as another aggravating circumstance, in addition to the back-to-back defects and rough lip of the elevation, increasing its dangerousness. This factor weighs moderately against ruling the condition trivial as a matter of law.

### 3. Lighting and Weather Conditions

There was no testimony regarding the time of day or weather conditions when plaintiff fell. From plaintiff's testimony that he typically jogged around his neighborhood after work, it can be inferred that the fall occurred in the late afternoon or early evening. The absence of testimony that it was dark or inclement, combined with the photos taken in the daylight the following day, support an inference that poor lighting and weather did not contribute to the condition's dangerousness. This inferable circumstance weighs in favor of deeming the condition trivial as a matter of law.

### 4. Prior Accidents and Plaintiff's Familiarity with the Area

The City presses most strenuously on its arguments that (1) plaintiff, himself, "safely traversed this particular sidewalk some 300 times before without incident," and (2) there is "no evidence of any prior accidents on this section of sidewalk."

Beginning with the second assertion, it is well established that the occurrence or nonoccurrence of prior similar accidents at the same site is " 'relevant to the determination of whether a condition is dangerous.' " (*Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346 [regarding absence of prior accidents]; see *Barone*, *supra*, 79 Cal.App.3d at p. 290 [occurrence of prior accidents is normally "sufficient to raise an issue of fact concerning 'dangerousness,' thereby precluding a court from finding

17.

the defect to be trivial as a matter of law"].) Here, the record indeed contains no evidence of prior accidents at the location where plaintiff fell. However, that is not to say the evidence showed a definite lack of prior similar accidents. The City's public works director testified that he was "not aware of any complaint" lodged regarding conditions on the west side of Fox Street, but he confirmed that he had not checked the records so he could not affirmatively say that no complaints had been registered. The City's manager likewise testified that he was not aware of anyone who was injured in that area, nor had he heard of any complaints regarding the sidewalk there; but no testimony was elicited as to what, if any, supporting records check he conducted. And the former mayor merely testified in deposition that he was not aware of any tripping incidents on the west side of Fox Street prior to the summer of 2017, about two years before plaintiff's fall. This combined testimony, at best, supports a weak inference that the offending condition had not caused prior accidents based on these three individuals having not personally heard of any such accidents.

Still, plaintiff's own extensive history of jogging along that part of Fox Street some 300 times over the previous two years without incident bolsters this factor insofar as the condition had never previously harmed plaintiff, himself. Even assuming there was airtight evidence that the condition had never caused anyone to trip and fall, "the absence of other similar accidents is [not] *dispositive* of whether a condition is dangerous," nor does it "compel[] a finding of nondangerousness absent other evidence." (*Lane v. City of Sacramento*, *supra*, 183 Cal.App.4th at p. 1346.) It is simply one factor that weighs in favor of dubbing the condition trivial as a matter of law.

Plaintiff's extensive history of jogging over that stretch of sidewalk also bears on the oft cited factor of the given plaintiff's level of familiarity with the area where they tripped. We respectfully part ways with the Court of Appeal precedent weighing a particular plaintiff's familiarity with the defect as part of the dangerous condition

18.

analysis.  In our view, individual familiarity is not a proper factor for consideration within the trivial defect doctrine.

The existence of a dangerous condition is something a plaintiff must plead and prove as part of establishing the element of duty.  (*Huckey*, *supra*, 37 Cal.App.5th at p. 1104; *Caloroso*, *supra*, 122 Cal.App.4th at p. 927.)  As when establishing duty in a general negligence claim, one establishes a condition's dangerousness (or conversely, its triviality) for a section 835 claim by reference to its reasonably foreseeable use by reasonably careful users as a class—not the particularities of the plaintiff who happens to have the misfortune of being injured by the condition.  (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572–573, fn. 6 ["[A] court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party."]; cf. *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1136 [reading §§ 830 & 835, subd. (a) together as "reflect[ing] an ordinary-negligence standard"].)

This fundamental principle is reflected in the section 835 case law recognizing that a condition's dangerousness can be established even when the plaintiff did not use due care when encountering it.  (See *Castro v. City of Thousand Oaks* (2015) 239 Cal.App.4th 1451, 1458–1459 ["[T]he fact the particular plaintiff may not have used due care is relevant only to [their] comparative fault and not to the issue of the presence of a dangerous condition."]; *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 768 ["The status of a condition as 'dangerous' for purposes of the statutory definition does *not* depend on whether the plaintiff … [was] actually exercising due care but on whether the condition of the property posed a substantial risk of injury to [hypothetical] persons who *were* exercising due care."].)

However, several Court of Appeal cases nevertheless treat the "plaintiff's knowledge of the area" as a factor to be considered in determining whether a defect is trivial as a matter of law. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105; see *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568 [interchangeably describing this factor as "plaintiff's knowledge of the conditions in the area" and "plaintiff's knowledge of the area"].) The City emphasizes plaintiff's undisputedly high level of familiarity from having jogged this stretch of sidewalk some 300 times over a two-year period before his accident. Finding nothing in the reasoning of *Huckey* or *Stathoulis* to justify a departure from general methods of assessing duty, however, we conclude that this unique fact about this particular plaintiff does not bear on the triviality of the defect encountered.

Although *Huckey* listed the plaintiff's knowledge of the area as one of the factors courts consider, the court did not apply that factor in its analysis. (See *Huckey*, *supra*, 37 Cal.App.5th at p. 1105.) *Stathoulis*, on which *Huckey* relied for the knowledge factor, reversed a grant of summary judgment for the city defendant because a triable issue existed as to the nature and quality of the defect at issue—a set of one-inch-deep gouge marks or holes in the street. (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 569–570.) In doing so, *Stathoulis* listed a plaintiff's knowledge of the area as a factor for determining triviality, and as part of the analysis it briefly noted that plaintiff had never before visited the street at issue. (*Id.* at pp. 567–568.) *Stathoulis* did not say in which direction that factor cut, however, focused as it was on the questions regarding the shape and nature of the holes. *Stathoulis* cited several Court of Appeal cases in support of the list of factors it summarized at the outset, but the only one of those cases to identify a plaintiff's level of knowledge of the area as an appropriate factor is *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 152. (See *Stathoulis*, at p. 567.)

20.

In declining to hold trivial a one-half to five-eighths of an inch sidewalk height differential under the predecessor Public Liability Act of 1923,[12] *Johnson v. City of Palo Alto*, *supra*, 199 Cal.App.2d 148 briefly noted that the plaintiff was injured during her "first sojourn down [the street] in this particular direction." (*Id.* at p. 152.) Like *Stathoulis*, *Johnson v. City of Palo Alto* does not explain the import of this fact. Based on the plaintiff-friendly outcome of both cases, at most they might support a proposition that a plaintiff's *lack* of familiarity weighs against a finding of triviality. Accordingly, these cases do not persuade us of the utility of considering a plaintiff's prior familiarity with the area where the injury occurred.

The City directs us to two earlier cases that also refer to their plaintiffs' prior awareness of the sidewalk conditions on which they tripped—although neither formally identifies that as a factor to be considered. (See *Whiting*, *supra*, 9 Cal.2d at p. 165; *Dunn v. Wagner*, *supra*, 22 Cal.App.2d at pp. 53–54.) In *Dunn*, the Court of Appeal ruled a one-inch sidewalk elevation trivial as a matter of law because the plaintiff had observed the defect on numerous prior occasions and therefore "by the use of ordinary care could have avoided the accident." (*Dunn*, at pp. 53–54.) As in *Stathoulis* and *Johnson v. City of Palo Alto*, however, the court failed to explain why the specific plaintiff's prior knowledge, and her implied failure to use due care on that occasion, should impact whether the defect could be classified as dangerous to pedestrians in general.

This leaves us with our Supreme Court's 1937 decision in *Whiting*, a case which the City identifies as very similar to our own. There, the Supreme Court reversed a

---

[12] The Public Liability Act of 1923 (former § 53050 et seq.), like the Government Claims Act that replaced it in 1963, made government entities "liable for a 'dangerous or defective condition' of public property, if it had notice thereof in time to remedy the condition." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 181 [noting the similarity of the laws in this respect]; Stats. 1923, ch. 328, § 2, p. 675.) Although the Government Claims Act changed various aspects of how public entities could be held liable for dangerous conditions (see *Metcalf v. County of San Joaquin*, *supra*, 42 Cal.4th at pp. 1134–1135; *Brown v. Poway Unified School Dist.*, *supra*, 4 Cal.4th at pp. 829–836), cases under the Public Liability Act remain instructive in assessing what constitutes a dangerous condition.

21.

posttrial judgment for the plaintiff, who had caught her toe on an uplifted edge of sidewalk measuring three-quarters of an inch at its highest. (*Whiting*, *supra*, 9 Cal.2d at pp. 164–166.) In the rather short opinion, the court listed the following series of facts about the defect before summarily labeling it a "minor defect":

> "[The defect] had existed for many years in the same condition and in a much traveled portion of the business section of the city. Many people walked daily over the sidewalk at that point. The defect was plainly visible. Its existence was common knowledge in the community. *The plaintiff herself knew of it.* She tripped over it in the daytime while she was walking toward the exposed side of the rise, without anything to obstruct her vision of the sidewalk area. She had good eyesight, was an excellent walker and frequently walked several miles in a day." (*Whiting*, *supra*, 9 Cal.2d at p. 165, italics added.)

We do not read this brief mention of plaintiff's personal knowledge, italicized above, as requiring consideration of a plaintiff's familiarity with the condition in the triviality analysis. In the absence of any express explanation of how the court weighed that particular fact, we read this sentence as more of a continuation of the previous statement, emphasizing how commonly known the defect was.[13] Evidence of *widespread* knowledge of a defect could, arguably, inform the level of risk and resulting duty in a way that a sole plaintiff's singular knowledge of a defect cannot. However, in

---

[13] Moreover, *Whiting* is primarily, if not entirely, a constructive notice case. Although the Supreme Court, as just discussed, labeled the sidewalk elevation a "minor defect," it did so on the way to holding that such a minor defect was insufficient to impart constructive notice on the city defendant. (*Whiting*, *supra*, 9 Cal.2d at p. 166; see *Barone*, *supra*, 79 Cal.App.3d at pp. 288–289.) "[C]ourts have treated the question of whether a defect is too trivial to qualify as a dangerous condition as distinct from the question of whether the defect is obvious enough to impart constructive notice." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 520; see *id.* at p. 525 [reading *Whiting* as holding a defect "not sufficiently obvious to impart constructive notice"].)

To the extent *Whiting* informs the analysis of whether a defect can be ruled not dangerous as a matter of law, we find it distinguishable primarily because the height differential is a minimum of one and three-quarter inches in the present case, compared to the maximum three-quarter-inch differential in *Whiting*. Further distinctions lie in the broader scope of the present condition (encompassing back-to-back defects) and the partial obstruction by the pine needles and debris.

the instant case, there was no evidence that the particular condition at issue was known to anyone but plaintiff, himself. We see no reason to factor plaintiff's unique prior knowledge into our assessment of whether there could be any disagreement on the level of risk the defect posed to reasonable sidewalk goers in general.

Accordingly, we disregard plaintiff's familiarity with the area and the specific sidewalk condition in our triviality analysis.

## III. Conclusion

On balance, the above factors do not combine to create a risk so trivial, minor, or insignificant that the sidewalk condition must be held not dangerous as a matter of law. Although the condition was visible on approach on an inferably clear, dry day and had not harmed others or plaintiff in his many prior jogs, reasonable minds could still differ as to its dangerousness based on the evidence of the first defect's relatively large height and rough edge, the presence of back-to-back defects, and the partial obstruction of the pine needles and debris. The determination of the condition's dangerousness was properly left for the jury, whose verdict we will not overturn.

## DISPOSITION

The judgment is affirmed. Pursuant to California Rules of Court, rule 8.278(a)(1), plaintiff is awarded costs on appeal.


HILL, P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.

23.

Exhibit 1



Exhibit 4



Exhibit 6

